2023 UT App 116

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
MANUEL ANDRES SAMUDIO,
Appellant.

Opinion
No. 20220280-CA
Filed September 28, 20233

Seventh District Court, Price Department
The Honorable Don M. Torgerson
No. 201700147

Benjamin Miller and Debra M. Nelson,
Attorneys for Appellant

Sean D. Reyes and Christopher A. Bates,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
FORSTER concurred.

MORTENSEN, Judge:

¶1     Manuel Andres Samudio's long history of legal troubles led to extensive contact with Judge Don Torgerson while the now-judge was still a defense attorney. When Samudio violated the probation requirements that had been imposed after he was convicted in two criminal cases, he appeared before Judge Torgerson, who had, by then, been appointed to the bench. The judge revoked Samudio's probation and imposed the original sentence. Alleging that Judge Torgerson should have recused himself for reasons of impartiality, Samudio appeals the revocation of his probation and imposition of the original sentences. While we agree that Judge Torgerson should have

recused himself as his impartiality could reasonably be questioned and because of his personal knowledge of matters outside the record, we nevertheless affirm because Samudio has not shown prejudice.

BACKGROUND

*Underlying Convictions*

¶2      Samudio pled guilty in two separate cases involving drug offenses.

¶3      In the first case, Samudio was charged in November 2019 with two counts of possession of a controlled substance (heroin and methamphetamine) and possession of drug paraphernalia. In September 2020, Samudio appeared before Judge Torgerson and pled guilty to the heroin charge, and the other two charges were dismissed. On the joint recommendation of the State and defense counsel, Samudio received a sentence of 364 days in jail, which was stayed, and twenty-four months' probation.

¶4      In the second case, Samudio was charged in March 2020 with one count of distribution of a controlled substance (heroin). In July 2021, he appeared before Judge George Harmond and pled guilty. In the plea agreement with Samudio, the State agreed to dismiss a pending charge for distribution of a controlled substance in a third case. Adult Probation and Parole (AP&P) recommended that Samudio serve a jail term of 150 days, but Judge Harmond rejected that recommendation because Samudio was undergoing medical treatment. Instead, the judge sentenced Samudio to a stayed prison term of five years to life and thirty-six months' probation.

*Alleged Probation Violations*

¶5      As it turned out, Samudio had several encounters with the legal system in the form of probation violations. In January 2022,

the State moved for an order to show cause as to why Samudio's probation should not be revoked owing to three violations.

¶6 First, when police attempted a search of Samudio's car in January 2022, he had "a pit bull dog that [was] known to be vicious to male officers" in the back seat. The dog lunged at an officer during the search. Under the conditions of his probation, Samudio was "not allowed to have vicious dogs that hinder AP&P from conducting proper supervision."

¶7 Second, AP&P had "not been able to locate" Samudio "at his listed residence" for over three months. When this issue was raised with Samudio, he claimed that he had been staying at his parents' house because he was sick and his oxygen was there. When AP&P visited his parents' house, his mother informed the agents that he was not there and that he stayed there only "every once in a while"—about once a week. When agents inspected the room he used at his parents' house, none of Samudio's "personal items" or his oxygen machine were found.

¶8 In the "progress/violation report" accompanying the order to show cause, Samudio's probation agent noted,

> [Samudio] was diagnosed with stomach cancer in the spring of 2021 and appears to be using his diagnosis and medical appointments as an excuse to circumvent probation. He continually messages [his] agent regarding his scheduled office appointments and changes them to when it is convenient to him. He continuously states he has doctor's appointments up north and treatment which is why he is not able to be located [at] home or able to make AP&P appointments and his treatment sessions. He also continues to change his story as to what he is suffering from and what organs are not functioning properly.

> On January 10, 2022, [Samudio] told [me] he was going in for kidney surgery on January 11, 2022 and would be required to stay in the hospital for multiple days. He was instructed to notify me when he was released from the hospital which he has still failed to do so. When this surgery was addressed with his mother at her residence that day, she did not know anything regarding the procedure. It should be noted that she is his primary driver to doctor's appointments and cancer treatment which she also verified that day.

> Mr. Samudio appears to be manipulating his probation so it fits his lifestyle and needs.

¶9 The third violation occurred when Samudio was arrested on a civil warrant in January 2022. When Samudio "was notified of the warrant he became belligerent with police and attempted to resist arrest by turning on the arresting officer." And when the officers tried to handcuff him, they had to pin Samudio "against the car in order to place him in handcuffs."

*Revocation of Probation*

¶10 The court issued orders to show cause in both possession cases for which Samudio had received probation. Samudio appeared before Judge Torgerson in March 2022 and admitted to the conduct alleged in each of the three probation violations. Based on this admitted conduct, Judge Torgerson found Samudio in willful violation of his probation in both cases.

¶11 The State noted that AP&P had recommended that Samudio receive 120 days of house arrest, be placed on a GPS monitor at his own expense, provide documentation of all medical appointments, and be released from house arrest only for verified appointments and employment. But the State expressed that it was "extremely reluctant to concur" with AP&P's

recommendation, saying that "Samudio has been manipulating the process, using his diagnosis as a crutch and absconding [from] and not working with AP&P." The State further pointed out that Samudio's presentence investigation report (PSI), completed for the underlying offense, scored him "in the imprisonment category," and the State noted the following:

> [Samudio] has an extensive criminal history, including prior convictions for distribution and possession with intent. . . . He was given a chance to complete probation and this is where we're at now. He hasn't . . . been successful. He hasn't engaged with probation. He hasn't let [AP&P] into his residence. It's extremely concerning that an individual with his history is released into the community and not doing what he needs to do. In the State's opinion, he is an extreme public safety risk and his probation should be revoked.

¶12 In response, Samudio's counsel was "a little surprised" at the State's adamant opposition to AP&P's recommendation, noting that this was only the "first time" Samudio had been before the court on an order to show cause for a probation violation and that Samudio had largely been successful on probation. His counsel also argued that Samudio understood that he needed to be more proactive in reporting his residences to AP&P. Samudio, speaking for himself, said he had been successful on probation apart from the "miscommunications" with his probation officer about his place of residence.

¶13 Judge Torgerson agreed with the State:

> I am not surprised by the recommendation from the State. The Court has seen Mr. Samudio in more than one jurisdiction, and . . . the Court's consistent experience with Mr. Samudio is that he has a moving target of medical conditions that arise at

convenient times . . . when either a warrant has been issued or something is required of him.

This [probation report[1]] shows that Mr. Samudio's not being truthful with AP&P about where he's living. He maintains an aggressive animal that AP&P's told him that he can't maintain at that location when they visit. . . . [T]hese aren't miscommunications; these are non-compliance.

And the Court agrees with the State in this case and believes that Mr. Samudio has been manipulating his probation and has been successful to a large degree. And so based on all that, the Court revokes the probation in both cases and imposes the original sentences.

*Samudio's Experience with Judge Torgerson*

¶14   As is evident from the court's comments, Samudio and Judge Torgerson have a history, a circumstance about which there is no dispute. In fact, Judge Torgerson represented Samudio as an attorney four times before becoming a judge.

¶15   In the first instance, Samudio pled guilty to a criminal charge in November 2009 and received a fine and probation. When he fell behind on his payments, then-attorney Torgerson was appointed to represent him. After Torgerson withdrew as counsel, Samudio then appeared without counsel numerous times on this matter over the next several years, at which point then-attorney Torgerson was again appointed to represent him.

---

1. Judge Torgerson said "presentence report" at this point. The context makes it obvious that he misspoke and was referring to the probation agent's progress/violation report. *See supra* ¶ 8.

Eventually, multiple orders to show cause were filed, Samudio's probation was revoked, and his original sentence was imposed.

¶16  Second, Samudio was again charged with a crime in December 2009. Then-attorney Torgerson represented him, but he eventually filed a motion to withdraw as counsel after Samudio failed to appear, which was granted.

¶17  Third, Samudio was represented by then-attorney Torgerson in another case in 2010 where the State dismissed two charges against Samudio.

¶18  Fourth, Samudio faced additional charges in March 2010. Samudio was again represented by then-attorney Torgerson. He subsequently pled guilty to the charges and was fined, but he fell behind on paying the fines, and an order to show cause was issued.

¶19  While Samudio did not express any concerns about Judge Torgerson's impartiality when his probation was revoked in the present case—perhaps having expected that his former attorney would view him more sympathetically than would another judge—he does so now, arguing that the judge should have recused himself based on this past representation. Samudio thus appeals.

ISSUE AND STANDARD OF REVIEW

¶20  The sole issue is whether Judge Torgerson plainly erred in not recusing himself from Samudio's proceedings based on his prior representation of and experience with Samudio. Because this issue was not raised below, it is addressed under the rubric of plain error. "For plain error," an appellant "must demonstrate (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the

appellant." *State v. Bond*, 2015 UT 88, ¶ 15, 361 P.3d 104 (cleaned up).

## ANALYSIS

¶21 Samudio argues that Judge Torgerson's failure to recuse himself violated the Utah Code of Judicial Conduct and Samudio's due process rights: "[The] Utah Code of Judicial [Conduct] and the Due Process Clause required that Judge Torgerson recuse himself from presiding over Mr. Samudio's revocation proceeding due to the appearance of []partiality that flowed from his considerable prior history with Mr. Samudio. His failure to do so was plain error."

¶22 The Utah Code of Judicial Conduct provides that a "judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Utah Code Jud. Conduct R. 2.11(A). Included in this rule are circumstances where a judge has "a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding," *id.* R. 2.11(A)(1), or where a judge has "served as a lawyer in the matter in controversy," *id.* R. 2.11(A)(6)(a); *see also State v. Elkface*, 2023 UT App 24, ¶ 9, 527 P.3d 820, *cert. denied*, 2023 WL 5673137 (Utah 2023). Impartiality is defined as the "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as presence of an objective and open mind in considering matters that come before a judge." Utah Code Jud. Conduct, Terminology. "Bias and prejudice are only improper when they are personal. A feeling of ill will or, conversely, favoritism toward one of the parties . . . are what constitute disqualifying bias or prejudice." *In re Young*, 1999 UT 81, ¶ 35, 984 P.2d 997 (cleaned up). Disqualification is appropriate "where, for instance, a judge has prior knowledge of evidentiary facts," "has a close social or professional relationship

with a party or an attorney," or "was involved in the case at hand before becoming a judge." *Id.*[2]

¶23 Additionally, the United States Supreme Court has explicitly stated that "due process guarantees an absence of actual bias on the part of a judge." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) (cleaned up). To make a bias determination, an appellate court does not ask "whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, the average judge in [the same] position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Id.* (cleaned up).

¶24 Samudio asserts that under either rubric (the Utah Code of Judicial Conduct or the Due Process Clause), Judge Torgerson's failure to recuse "was plain error."

¶25 As an initial matter, we share Samudio's concerns about the appearance of bias owing to Judge Torgerson's past involvement in Samudio's legal affairs. Indeed, it seems obvious that it would have been prudent for Judge Torgerson to recuse himself based on his past representation of Samudio. At a minimum, even absent actual bias or prejudice,[3] Judge Torgerson should have disclosed his prior association with Samudio and allowed Samudio—outside the presence of the judge or any court personnel—to discuss with counsel whether to waive

---

2. We are aware that this case presents a slightly different scenario because the cases where then-attorney Torgerson was involved are not "the matter in controversy" or the "case at hand" insofar as the probation revocation is concerned. But these principles are nevertheless illuminating since it is likely that Judge Torgerson was informed by his past involvement in Samudio's cases in making the decision to revoke probation.

3. In the case of actual bias or prejudice, the conflict is non-waivable, and a judge must recuse. *See* Utah Code Jud. Conduct R. 2.11(A)(1), (D).

disqualification. *See* Utah Code Jud. Conduct R. 2.11(D). The fact that Samudio appears to have been a difficult client and that Judge Torgerson repeatedly withdrew as counsel suggests that the two did not share an altogether happy relationship. This history alone suggests that recusal would have been appropriate. But in addition, we are troubled by Judge Torgerson's comments about his "consistent experience" with Samudio "in more than one jurisdiction." The only reasonable inference from this comment is that the judge was referring to his experience and knowledge of facts outside the record (as both the cases before the court were from the same jurisdiction) and likely was referring to his experience with Samudio while acting as his attorney.

¶26    Anyone hearing the judge's comments would likely conclude that Judge Torgerson did not hold Samudio's reliability in high regard. Obviously, a judge may appropriately develop a dim view of the conduct and attitude of a party who repeatedly appears before the judge or establishes a poor track record in courts throughout the state. The trouble here is that Judge Torgerson's knowledge of facts and his past interactions with Samudio appear to come from circumstances disconnected from Judge Torgerson acting in his judicial capacity. We thus agree that it appears that violations of the Rules of Judicial Conduct and Samudio's due process rights likely occurred, and out of an abundance of caution, Judge Torgerson should have recused himself even though Samudio did not object to Judge Torgerson presiding over this probation revocation proceeding.

¶27    Even assuming these violations occurred, Samudio is not automatically entitled to relief where he made no objection to Judge Torgerson's involvement below. To obtain relief under a plain error analysis pursuant to either the Due Process Clause or the Utah Code of Judicial Conduct, Samudio must also demonstrate that these violations caused him harm. And here, we are not convinced that Samudio suffered harm as a result of Judge Torgerson not recusing himself.

¶28     In contrast, Samudio argues that he "need not prove harm to warrant reversal and remand for the violation of the due process clause." This is simply incorrect. As outlined above, to obtain relief *under a plain error analysis*, a party must prove harm, or, in other words, that absent the error, there is a reasonable likelihood of a more favorable outcome. Our supreme court took up this issue in *State v. Bond*, 2015 UT 88, 361 P.3d 104, where it addressed "the proper review standard for an unpreserved federal constitutional claim." *Id.* ¶ 41. The *Bond* court acknowledged that the United States Supreme Court "held that when a defendant raises an unpreserved constitutional claim—even one serious enough to constitute structural error—the claim is subject to plain error review under which the defendant bears the burden to show harm." *Id.* ¶ 42. After reviewing several other high court cases, our supreme court concluded, "Based upon these federal pronouncements, we hold that unpreserved federal constitutional claims are not subject to a heightened review standard but are to be reviewed under our plain error doctrine," including the burden to "demonstrate prejudice." *Id.* ¶¶ 44, 46.

¶29     To show harm in this context, Samudio must demonstrate a "reasonable likelihood" that he would have received a "more favorable outcome" if Judge Torgerson had recused himself. *See State v. Holgate*, 2000 UT 74, ¶ 13, 10 P.3d 346 (cleaned up); *see also State v. Alonzo*, 973 P.2d 975, 979 (Utah 1998) ("A trial judge's failure to recuse based on the appearance of bias may be grounds for reversal if actual prejudice is shown. Actual prejudice can be shown when there exists a reasonable likelihood that the result would have been more favorable for the defendants absent the trial judge's appearance of bias." (cleaned up)). Given this standard, we are not convinced that Samudio suffered any harm owing to Judge Torgerson's involvement in this case for the following reasons.

¶30     First, there is no indication that Judge Torgerson's decision to revoke Samudio's probation was based on his past experience with him. Rather, Samudio's probation was revoked because of

Samudio's various probation violations. He impeded officers from searching his vehicle by having an aggressive dog. He, at the very least, was disingenuous about his place of residence in failing to notify AP&P of changes to his living situation. And to top it off, Samudio resisted arrest when served a civil arrest warrant. All this leads to the inevitable conclusion that Samudio's probation was not revoked because Judge Torgerson held a long-standing grudge against him but because Samudio made some very poor choices while skating on the thin ice that probation affords a convicted felon.

¶31    Second, the probation agent reported that she perceived Samudio was using his medical conditions and doctor appointments as an excuse to avoid his probation obligations. *See supra* ¶ 8. Judge Torgerson echoed this perception in his comments when he said that his "consistent experience" was that Samudio was "a moving target of medical conditions" arising at "convenient times." While Judge Torgerson's comment implies that he might have based his conclusions on his past legal advocacy of Samudio, there was plenty of evidence in the probation report, standing alone, for any judge to reach the same conclusion.

¶32    Then there is the State's stance on AP&P's recommendation. To say the least, the State was adamantly opposed to AP&P's plan, stating that it was "extremely reluctant" to go along because Samudio was "manipulating the process," "using his diagnosis as a crutch," and "absconding and not working with AP&P"; had "an extensive criminal history"; and constituted "an extreme public safety risk." Samudio makes no effort to explain why Judge Torgerson was not persuaded that the litany of concerns enumerated by the State justified revoking probation.

¶33    Finally, the State's observation that Samudio has "an extensive criminal history" is an understatement. While we are not able to discuss his juvenile record in any detail, suffice it to

say that it was fulsome. And his adult criminal history records no fewer than thirty-six separate offenses, ranging from misdemeanors to felonies. Of course, Judge Torgerson had access to all this information because Samudio's PSI was before him. We have little trouble concluding that any judge would have likely revoked Samudio's probation when faced with his criminal record.

¶34 In sum, the recusal of Judge Torgerson, while it plainly should have happened, would not have created a reasonable likelihood of a more favorable result for Samudio for the reasons just identified: (1) Samudio had multiple probation violations, (2) the probation report supported the conclusion that Samudio actively engaged in avoiding his probation obligations, (3) the State offered ample reason to revoke his probation, and (4) Samudio had an extensive criminal history. These circumstances—especially their aggregate impact—would have given any judge serious reason to pause at the prospect of the rather lenient approach advocated by AP&P. Accordingly, Samudio has failed to demonstrate that he was harmed by Judge Torgerson remaining on his case.

## CONCLUSION

¶35 While Judge Torgerson's experience with representing Samudio suggests that recusal would have been prudent or even required, we conclude that Samudio's claim on appeal comes up short because he has failed to demonstrate prejudice.

¶36 Affirmed.

———————