2025 UT App 31

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
THOMAS DEAN BROWN JR.,
Appellant.

Opinion
No. 20220799-CA
Filed March 6, 2025

Third District Court, West Jordan Department
The Honorable James D. Gardner
No. 211909220

Andrea J. Garland, Tyler Needham, and Darnell
Crandall, Attorneys for Appellant

Derek E. Brown and Christopher A. Bates,
Attorneys for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

TENNEY, Judge:

¶1     A jury convicted Thomas Brown of aggravated assault. Brown now challenges his conviction, arguing that (1) there was insufficient evidence to support the conviction; (2) the district court erred in admitting evidence that Brown now claims was expert testimony; and (3) the district court violated his constitutional rights by requiring him to acknowledge, at sentencing, that he could no longer possess a firearm. For the reasons set forth below, we disagree with each of Brown's arguments. We accordingly affirm his conviction and reject his challenge relating to the firearm restriction.

BACKGROUND[1]

¶2      In July 2021, Brown and his girlfriend (Girlfriend) had been dating for four years and living together for two when they traveled to Utah for a family reunion. Before returning to their home in Arizona, the couple stopped in Salt Lake City to get Girlfriend's car fixed. The issues with Girlfriend's car turned out to be worse than anticipated, and they remained in Salt Lake City for about a month. While there, Brown and Girlfriend stayed in an apartment at the back of Girlfriend's father's boxing gym. Girlfriend's brother lived in an apartment next door to the gym.

¶3      On August 25, 2021, after the car was finally fixed, Girlfriend began preparing to return to Arizona. The relationship between Girlfriend and Brown had "not always [been] good in general," and they had argued earlier that day. That afternoon, Girlfriend approached Brown, who was in the bedroom of the apartment, and let him know that she wanted to leave to go back to Arizona in about 30 minutes. When she returned to the bedroom a short time later, Girlfriend found Brown lying on the bed with a handgun on his chest and his finger on the trigger. Girlfriend stood in the doorway and asked Brown if he was ready to go. Brown responded, "Don't come any further." Girlfriend later testified that when Brown said this, he seemed "methodical" and had a "very serious tone."

¶4      Brown then lifted the gun off his chest and began "moving" it "towards [Girlfriend's] direction." As he did, Brown said to her, "Who's going to die first?" Girlfriend felt an "urgency to immediately leave" and had "great concern" for her safety. She

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Cesspooch*, 2024 UT App 15, n.1, 544 P.3d 1046 (quotation simplified), *cert. denied*, 550 P.3d 994 (Utah 2024).

left "as quickly as [she] could," and she was able to do so before the gun was directly pointed at her. As she was walking away, Girlfriend said, "I'm calling the police," to which Brown responded, "Go ahead." Girlfriend went to her brother's apartment and let him know what was going on, and her brother then called the police.

¶5 When officers arrived at the scene, they attempted to communicate with Brown using a bullhorn. After receiving no response for a couple of hours, a SWAT team used an explosive charge to blow out the bedroom window. At that point, Brown exited the building and was taken into custody. Acting pursuant to a search warrant, officers entered the apartment. There, officers found a gun on the floor of the bedroom (though it had no bullets in it), and they also found a backpack that contained Brown's identification, his credit cards, and some bullets.

¶6 Brown was taken to a police station and interviewed by a detective (Detective). In his interview, Brown denied saying "Who's going to die first?" He also said that he did not remember Girlfriend walking into the room. But Brown admitted that his gun was laying on his chest, and he confirmed that it was unloaded.

¶7 Brown was arrested after the interview, and he was later charged with one count of aggravated assault, a third-degree felony.[2] The case went to trial, where Girlfriend testified about the events described above. While Girlfriend was describing the moments in which Brown moved the gun in her direction, Girlfriend repeatedly claimed that Brown's finger was on the trigger.

---

2. Brown was also charged with one count of threat of violence, a class B misdemeanor, but that charge was dismissed on the State's motion at the outset of trial.

¶8      As part of its case, the State also called Detective, who, in addition to interviewing Brown, had interviewed Girlfriend shortly after the incident. In his direct examination, Detective recounted Brown's statements as described above. During cross-examination, Brown's counsel elicited testimony from Detective that Girlfriend had not told Detective, in her interview, that Brown's finger was on the trigger. During the State's redirect, the prosecutor asked, "[A]s far as whether or not his finger was on the trigger, is that something that you specifically asked [Girlfriend] about?" Detective responded, "No, I did not." The prosecutor then asked, "When you are interviewing someone, how do you interview them?" As part of his response to that question, Detective observed that he "wouldn't specifically ask that because most people involved in a situation like that are not concentrating on whether somebody's finger is on the trigger." Continuing, Detective said that "it takes a second for somebody to move their finger off the side rail of a handgun into the trigger and cause that to go off." Brown's counsel did not object to this answer.

¶9      At the end of the State's case, defense counsel moved for a directed verdict, arguing, in part, that there was not "enough evidence that's been presented in this trial that would warrant sending this case to the jury for a decision." The court denied the motion. Both parties then rested (the defense did not put on any witnesses in its own case), and after deliberations, the jury found Brown guilty of aggravated assault.

¶10     At the sentencing hearing, the court informed Brown that due to his conviction, and pursuant to Utah Code section 76-10-503, he was now a restricted person and would be subject to criminal penalties if he possessed a firearm. Pursuant to section 76-10-503.1(4), the court then required Brown to sign a written acknowledgment in which he confirmed that he understood that he could no longer possess a firearm. Without objection, Brown signed that acknowledgment in open court. The court then

sentenced Brown to prison, suspended that sentence, and placed Brown on probation.

ISSUES AND STANDARDS OF REVIEW

¶11 On appeal, Brown first argues that there was insufficient evidence to support his conviction for aggravated assault. We understand this to be a challenge to the denial of Brown's motion for a directed verdict. While the State contends that this motion was too vague to have preserved this challenge, for the reasons set forth below, we choose to address the claim on its merits. In doing so, "we will uphold the trial court's decision if, upon reviewing the evidence and all inferences that can be reasonably drawn from it, we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Mottaghian*, 2022 UT App 8, ¶ 32, 504 P.3d 773 (quotation simplified).

¶12 Brown raises two additional issues that he concedes are unpreserved. Brown argues that the district court erred by not preventing Detective from testifying about the common responses of persons who have firearms pointed at them. Brown also argues that the court erred by requiring him to sign an acknowledgment at the sentencing hearing stating that he knew he was now subject to a firearm restriction. Because these issues were not preserved, Brown asks us to review both of them for plain error. "To demonstrate plain error, a defendant must establish that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *State v. Carrera*, 2022 UT App 100, ¶ 22, 517 P.3d 440 (quotation simplified).[3]

---

3. Brown also raises a fourth issue, but we can briefly dispense with it here. Brown argues that the district court erred in not

(continued…)

ANALYSIS

I. Insufficiency of the Evidence

¶13    At the close of the State's case, defense counsel made a motion for a directed verdict, arguing that there was not enough evidence to "warrant sending this case to the jury for a decision," but the district court denied the motion. On appeal, Brown again argues that there was insufficient evidence to support his conviction.

¶14    As an initial matter, we note that the State has argued that Brown's directed verdict motion was too vague to have properly preserved the particular sufficiency challenges he now makes on appeal. Brown disputes this. But we have no need to resolve this dispute. Under our precedent, "if the merits of a claim can easily be resolved in favor of the party asserting that the claim was not

---

suppressing the evidence obtained during the search of the apartment because, according to Brown, the search warrant listed a different address than the one where Brown and Girlfriend were actually staying. But the search warrant is not included in the record, so we have no means of assessing the veracity of Brown's claim. We have held that "the appellant has the burden of providing the reviewing court with an adequate record on appeal to prove his allegations." *Call v. City of West Jordan*, 788 P.2d 1049, 1052 (Utah Ct. App. 1990). "When crucial matters are not included in the record, the missing portions are presumed to support the action of the trial court." *State v. Chettero*, 2013 UT 9, ¶ 32, 297 P.3d 582 (quotation simplified). In other words, "when an appellant fails to provide an adequate record on appeal, we presume the regularity of the proceedings below." *State v. Pritchett*, 2003 UT 24, ¶ 13, 69 P.3d 1278. On this record, we have no basis for concluding that the alleged discrepancy actually occurred, much less that it provided a basis for suppressing any evidence that mattered to the outcome of this case. We decline to reverse on this basis.

preserved, we readily may opt to do so without addressing preservation." *State v. Kitches*, 2021 UT App 24, ¶ 28, 484 P.3d 415 (emphasis omitted). This is so here.[4]

¶15   To prevail on an insufficiency of the evidence claim, a defendant "must show that, when viewed in the light most favorable to the State, *no evidence existed* from which a reasonable jury could find beyond a reasonable doubt that the defendant committed the crime." *State v. Johnson*, 2022 UT 14, ¶ 18, 508 P.3d 100 (emphasis in original, quotation otherwise simplified). If even "some evidence exists from which a reasonable jury could find that the elements of the crime had been proven," the appellate court will not reverse. *State v. Stricklan*, 2020 UT 65, ¶ 30, 477 P.3d 1251 (quotation simplified).

¶16   Brown was charged with aggravated assault. A person commits aggravated assault, in relevant part, if he or she uses a "dangerous weapon" and intentionally, knowingly, or recklessly

---

4. Our supreme court has repeatedly held that a defendant must preserve an insufficiency of the evidence argument. *See, e.g., State v. Prater*, 2017 UT 13, ¶ 27, 392 P.3d 398; *State v. Honie*, 2002 UT 4, ¶ 44, 57 P.3d 977; *State v. Holgate*, 2000 UT 74, ¶ 16, 10 P.3d 346. In a lengthy section of his appellate brief, Brown asks us to "overrule" these cases, arguing that they violate his constitutionally guaranteed right to an appeal. If this section was meant to preserve this argument for possible review by the supreme court, that task has been amply accomplished. But as a jurisprudential matter, this court has no authority to overrule the supreme court. *See, e.g., In re G.D.*, 2021 UT 19, ¶ 67, 491 P.3d 867 (explaining that because the court of appeals is "bound by" the supreme court's precedents, a request for the court of appeals "to overturn" supreme court precedent would be "futile"). In any event, as noted above, we ultimately do not decide Brown's sufficiency challenge on preservation grounds, instead rejecting his various arguments on their merits.

"makes a threat, accompanied by a show of immediate force or violence, to do bodily injury to another." Utah Code § 76-5-103(2)(a)(ii), (b)(i)(A).[5]

¶17   On appeal, Brown argues that there was insufficient evidence of "a threat, accompanied by a show of immediate force or violence." *Id.* § 76-5-103(2)(a)(ii). We recently explained that for purposes of this statute, "a threat is the expression of an intention to inflict injury on another through conduct or words." *State v. Graydon*, 2023 UT App 4, ¶ 37, 524 P.3d 1034 (quotation simplified), *cert. denied*, 531 P.3d 731 (Utah 2023). And we further agreed that the "show of immediate force" element can include a "display of one's power, influence or capability to cause harm, meant to act as a warning or deterrent to others." *Id.* (quotation simplified). With these definitions in mind, we then held that there was sufficient evidence to support an aggravated assault conviction there, where the evidence showed that, after engaging in an earlier confrontation that resulted in physical blows, the defendant had "pointed a handgun in [the victim's] general direction." *Id.* ¶ 39.

¶18   There was similar evidence here. As noted, Girlfriend testified that she and Brown had argued earlier that day, and she further testified that when she approached Brown in the afternoon to let him know that she'd like to leave soon, Brown raised a gun, began "moving" it "towards [her] direction," and said, "Who's going to die first?" Given the deferential standard of review, we conclude that pointing a gun in a person's general direction while making a threatening comment is at least some evidence from which a jury could find that the person had made

---

5. The aggravated assault statute has been amended since Brown's trial, but because there were no substantive changes to the elements in question, we cite the current version for convenience.

a "threat, accompanied by a show of immediate force or violence." Utah Code § 76-5-103(2)(a)(ii).

¶19 Pushing back, Brown first claims that there was nothing "immediate" about the threat because there was, in his view, insufficient evidence to show that his finger was on the trigger when he moved the gun in Girlfriend's direction. Although Girlfriend specifically testified at trial that Brown's finger *was* on the trigger, Brown claims that this testimony was unreliable. In support of that claim, Brown points to testimony indicating that Girlfriend's vision wasn't great and that she wasn't wearing glasses at the time of the incident, and he further emphasizes the fact that Girlfriend didn't tell Detective in her interview that Brown's finger had been on the trigger.

¶20 But we see no basis for concluding that this potential problem somehow required (or even allowed) the district court to grant the directed verdict motion. As noted, we held in *Graydon* that there was enough evidence to support an aggravated assault conviction where the defendant pointed a handgun in the victim's "general direction," and we made no mention of whether the defendant's finger was on the trigger. 2023 UT App 4, ¶ 39. And we see no basis for now imposing this as a requirement to support aggravated assault convictions moving forward. After all, as explained, the statute's "show of immediate force" element can include a "display of one's power, influence or capability to cause harm, meant to act as a warning or deterrent to others." *Id.* ¶ 37 (quotation simplified). We have no difficulty concluding that a jury could find that pointing a gun in someone's direction can constitute a display of the power or capability to cause harm, even if the person's finger wasn't on the trigger at that moment but was instead mere inches or even millimeters away on some other part of the gun. After all, the gun itself is the instrumentality by which the person could conceivably harm the other. By pointing it in such a manner, the person is certainly displaying the capability of harming the other, particularly given that it would not take much

effort or time, if desired, to move a finger to the trigger and then fire. Brown's contrary argument is meritless.

¶21   Brown next claims that there was nothing "immediate" about any threat that he posed in this case because Girlfriend told Detective in her interview that "she didn't feel any immediate threat." As a related matter, he also points to testimony at trial indicating that Girlfriend was able to "grab[] some things" before walking (and not running) away, which Brown contends is "a response consistent with a perceived non-immediate threat."

¶22   The statutory element at issue is satisfied if the defendant "makes a threat, accompanied by a show of immediate force." Utah Code § 76-5-103(2)(a)(ii). But there's no additional statutory requirement that the victim subjectively perceive it as a threat or state that he or she actually felt threatened, Brown points to no case that interpreted this statute as implicitly requiring a subjective perception of threat as an additional element, and we're aware of no case imposing such a requirement either. And while we certainly agree that there must be some limits on the kinds of actions that could constitute a "threat," we've previously held in an unpublished decision that an action can satisfy this element if a "reasonable person" could believe that the defendant intended to use the force in question. *In re O.R.*, 2007 UT App 307U, para. 3 (per curiam). A reasonable person could certainly believe that, by making a threatening statement and then pointing a gun in Girlfriend's direction, Brown had made such a threat.

¶23   In any event, even if there were such an implicit subjective-perception requirement (which, again, we do not decide), Girlfriend testified at trial that when Brown began raising the gun, she felt the "urgency to immediately leave." And she further testified that she felt "great concern for [her] safety." To the extent that her actions at the scene (namely, calmly walking away) or her subsequent statements to Detective seemed to conflict with her trial testimony, that created a question for the jury about how

much weight to give that testimony. But as we've explained, all that was required to survive the directed verdict motion was "some evidence" from which the jury could find that the elements of the crime had been proven, *Stricklan*, 2020 UT 65, ¶ 30 (quotation simplified), and the testimony from Girlfriend that she did feel threatened was at least some evidence. We therefore see no evidentiary infirmity here that required the district court to grant the directed verdict motion.

¶24　Finally, Brown points to several discrepancies in Girlfriend's testimony about various details surrounding the events in question, such as what color of shorts Brown was wearing on that day and whether Girlfriend managed to grab her purse before she left the apartment.

¶25　But we need not wade into the particulars of these claims. Each of them turns in some measure on how much weight should have been given to Girlfriend's testimony. But "any consideration of discrepancies in testimony [is] in the sole province of the jury." *State v. Bradley*, 2002 UT App 348, ¶ 55, 57 P.3d 1139. And even where a witness has given somewhat conflicting accounts, "the question of which version" of a witness's story is "more credible is the type of question we routinely require juries to answer." *State v. Cecala*, 2021 UT App 141, ¶ 29, 502 P.3d 790 (quotation simplified). Here, defense counsel highlighted these various discrepancies for the jury, and yet the jury chose to convict Brown anyway. We owe deference to that decision, and we therefore see no basis for overturning Brown's conviction as a result of any of the identified discrepancies.[6]

---

6. In what's sometimes referred to as a "*Robbins* claim," a "defendant asks the court to disregard a particular witness's testimony as 'inherently improbable' when determining whether there is sufficient evidence for a conviction." *State v. Lewis*, 2020

(continued…)

## II. Detective's Testimony

¶26   In his cross-examination of Detective, defense counsel elicited testimony that Girlfriend had not told Detective during her interview that Brown's finger was on the trigger. In response to a question from the prosecutor during redirect, Detective observed that he "wouldn't specifically ask that because most people involved in a situation like that are not concentrating on whether somebody's finger is on the trigger." Detective also said that "it takes a second for somebody to move their finger off the side rail of a handgun into the trigger and cause that to go off." Brown's counsel did not object to this testimony.

¶27   On appeal, Brown argues that this testimony qualified as expert testimony under rule 702 of the Utah Rules of Evidence, and he then argues that the testimony was inadmissible because the testimony wasn't sufficiently reliable. Separate from his expert testimony claim, Brown argues that this testimony should have been excluded under rule 403. Brown acknowledges, however, that he did not object on either basis below. As a result, he asks us

---

UT App 132, ¶ 45 n.5, 475 P.3d 956; *see also State v. Robbins*, 2009 UT 23, 210 P.3d 288. While Brown cites *Robbins* in passing in his brief, he does not specifically make, much less adequately develop, a *Robbins* argument. In any event, this "doctrine is not satisfied by generalized concerns about a witness's credibility," nor is it "satisfied where the appellant raises garden-variety credibility questions, such as which witness to believe, or which version of a witness's conflicting account to believe." *In re S.M.*, 2024 UT App 135, ¶ 33, 557 P.3d 649 (quotation simplified). While Brown has pointed to some discrepancies in Girlfriend's testimony, he points to nothing that would rise to the level of satisfying this standard. We therefore see no basis for disregarding Girlfriend's testimony as a whole, instead concluding that the deficiencies identified by Brown were appropriately left for the jury to consider.

to reverse for plain error. To demonstrate plain error, Brown "must establish that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *State v. Carrera*, 2022 UT App 100, ¶ 22, 517 P.3d 440 (quotation simplified). Notably, we need not address the error or obvious error prongs of this test if we conclude that Brown has not established prejudice. *See State v. Cesspooch*, 2024 UT App 15, ¶ 9, 544 P.3d 1046 ("If any one of these requirements is not met, plain error is not established." (quotation simplified)), *cert. denied*, 550 P.3d 994 (Utah 2024). This is so here.

¶28    To show prejudice for plain error purposes, Brown must demonstrate that "there is a reasonable probability that, but for the error, the result of the proceeding would have been different." *State v. Norton*, 2021 UT 02, ¶ 101, 481 P.3d 445 (quotation simplified). When assessing this claim, we "consider the totality of the evidence before the judge or jury, as well as the circumstances of the case as a whole." *State v. Alarid*, 2022 UT App 84, ¶ 47, 514 P.3d 610 (quotation simplified). And we further consider the "counterfactual scenarios," including "what would have happened but for" the claimed error. *Id.* ¶ 51 (quotation simplified).[7]

¶29    Here, the exchange at issue was directed at the credibility of Girlfriend's claim that Brown's finger was on the trigger when Brown pointed the gun in her direction. As explained above, however, we conclude that this was not an element of the offense. Instead, the combination of Brown's verbal threat and pointing the gun in her direction was enough to support the conviction. As a result, the question of whether Brown's finger was on the trigger was immaterial to the ultimate question before the jury. Thus,

---

7. *State v. Alarid* was an ineffective assistance of counsel case, 2022 UT App 84, ¶ 47, 514 P.3d 610, but the "prejudice analysis is the same for claims of plain error and ineffective assistance of counsel." *State v. Norton*, 2021 UT 02, ¶ 101, 481 P.3d 445.

even if it were true that this testimony should have been stricken, we see no reasonable basis for concluding that Brown would have received a more favorable verdict as a result.[8]

---

8. As part of this claim, Brown also suggests that Detective's testimony constituted improper bolstering of Girlfriend's testimony. The bolstering doctrine finds its footing in rule 608(a) of the Utah Rules of Evidence, which "permits testimony concerning a witness's general character or reputation for truthfulness but prohibits any testimony as to a witness's truthfulness on a particular occasion." *State v. Nunes*, 2020 UT App 145, ¶ 22, 476 P.3d 172 (quotation simplified). Yet Brown does not cite rule 608(a) in his brief, much less explain how this testimony violated its terms.

In any event, we don't read Detective's testimony as having obviously violated that rule, which is what would be required to establish plain error. After all, in the testimony in question, Detective did not offer any direct opinion about Girlfriend's truthfulness. Instead, what Detective testified about were his reasons for not asking her any questions about whether she saw Brown's finger on the trigger. In this sense, he was indirectly professing to be agnostic about the issue. Indeed, if anything, by testifying that "most people involved in a situation like that are not concentrating on whether somebody's finger is on the trigger," Detective may have actually undermined Girlfriend's credibility on this point by calling into question whether she was actually focused on Brown's finger when she saw him pointing a gun in her direction. Thus, on the state of this record and this briefing, we see no basis for concluding that Detective's testimony was obviously impermissible bolstering. Brown's claims relating to Detective's testimony therefore fail.

Finally, we note that Brown asks us to apply the cumulative error doctrine to his claims. "Cumulative error refers to a number of errors which prejudice a defendant's right to a fair

(continued…)

### III. Firearm Restriction Acknowledgment

¶30 At sentencing, the district court required Brown to sign an acknowledgment that he could no longer possess a firearm, and it did so pursuant to Utah Code sections 76-10-503 (which sets forth the restricted person scheme) and 76-10-503.1(4) (which requires district courts to ask defendants to sign such an acknowledgment at sentencing hearings).[9] Without objection, Brown signed the acknowledgment.

¶31 Brown now argues that it was plain error for the district court to require him to sign the acknowledgment. In Brown's view, this was unconstitutional because the underlying firearm restriction itself violates his Second Amendment rights. In the alternative, and based on the same alleged constitutional violation, Brown asks this court to remand the case so that the district court can correct his sentence pursuant to rule 22(e)(2) of the Utah Rules of Criminal Procedure.

---

trial." *State v. Martinez-Castellanos*, 2018 UT 46, ¶ 39, 428 P.3d 1038 (quotation simplified). Under that doctrine, "we will reverse a conviction . . . when the cumulative effect of the several errors undermines our confidence that a fair trial was had." *State v. Ringstad*, 2018 UT App 66, ¶ 33, 424 P.3d 1052 (quotation simplified). As explained above, we see no error with respect to the alleged insufficiency of the evidence. And while we have rejected one portion of Brown's claim relating to Detective's testimony based on a lack of prejudice, there is nothing else with which to accumulate prejudice. This claim therefore fails.

9. As with the aggravated assault statute, these statutes have been amended since Brown's sentencing, but because those amendments are not material to the issue before us, we cite the current versions for convenience.

A. Plain Error

¶32 "When a defendant raises an unpreserved constitutional claim—even one serious enough to constitute structural error— the claim is subject to plain error review under which the defendant bears the burden to show harm." *State v. Samudio*, 2023 UT App 116, ¶ 28, 537 P.3d 674 (quotation simplified), *cert. denied*, 544 P.3d 457 (Utah 2024). As discussed, one of the requirements of plain error is that the defendant must show that there was obvious error. *See Carrera*, 2022 UT App 100, ¶ 22. "To establish that the error should have been obvious to the trial court, the appellant must show that the law governing the error was clear at the time the alleged error was made." *State v. Roman*, 2015 UT App 183, ¶ 9, 356 P.3d 185 (quotation simplified). Consequently, "an error is not obvious if there is no settled appellate law to guide the trial court." *Id.* (quotation simplified).

¶33 In his brief, Brown relies on *New York State Rifle & Pistol Ass'n v. Bruen*, wherein the United States Supreme Court held that a New York statute requiring individuals to prove "proper cause" to "have and carry" a concealed firearm before obtaining a license was unconstitutional. 597 U.S. 1, 12, 39 (2022) (quotation simplified). The Supreme Court held that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id.* at 8. The Supreme Court explained that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 17. And the Supreme Court further stated that to "justify" any regulation of those rights, the "government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* With *Bruen* as his backing, Brown contends that "there is no historical tradition of mandatory disarmament of restricted persons as contemplated by Utah statutes." From this, he argues that it was unconstitutional to require him to acknowledge that he can no longer possess a firearm.

¶34 But the problem for Brown is that, because this issue comes before us on plain error review, Brown must show that this acknowledgment (and, by extension, the underlying restriction) are *obviously* unconstitutional. He has not carried this burden.

¶35 *Bruen* was issued in June 2022, and Brown was sentenced in August 2022. Even with *Bruen* as precedent, lower courts were soon divided on the question of whether firearm restrictions placed on felons were constitutional. Most notably, various federal circuits were repeatedly asked to decide whether provisions from a federal statute that bans possession of a firearm by felons (namely, 18 U.S.C. § 922(g)), were constitutional. The Third and Fifth Circuits held that some portions of that statute were now unconstitutional. *See Range v. Attorney Gen.*, 69 F.4th 96, 99, 106 (3d Cir. 2023) (en banc) (holding that 18 U.S.C. section 922(g)(1) was unconstitutional as applied to a defendant with a non-violent misdemeanor conviction), *vacated sub nom. Garland v. Range*, 144 S. Ct. 2706 (2024); *United States v. Daniels*, 77 F.4th 337, 355 (5th Cir. 2023) (holding that 18 U.S.C. section 922(g)(3) was unconstitutional as applied to a user of a controlled substance), *vacated*, 144 S. Ct. 2707 (2024). But the Eighth, Tenth, and Eleventh Circuits upheld portions of that same statute against the same kind of constitutional challenge. *See United States v. Sitladeen*, 64 F.4th 978, 987 (8th Cir. 2023) (addressing 18 U.S.C. section 922(g)(5), the subsection barring certain noncitizens from possessing a firearm); *Vincent v. Garland*, 80 F.4th 1197, 1202 (10th Cir. 2023) (addressing 18 U.S.C. section 922(g)(1)), *vacated*, 144 S. Ct. 2708 (2024); *United States v. Dubois*, 94 F.4th 1284, 1293 (11th Cir. 2024) (same), *vacated*, No. 24-5744, 2025 WL 76413 (U.S. Jan. 13, 2025).

¶36 Perhaps more importantly, just last term, the United States Supreme Court issued *United States v. Rahimi*, 602 U.S. 680, 700 (2024), wherein it upheld the constitutionality of 18 U.S.C. section 922(g)(8), a statute prohibiting firearm possession by a person subject to a domestic violence restraining order. After conducting

a historical analysis of firearm restrictions in the country, the Court determined that "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others," and it further held that "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id.* at 700, 702.

¶37 Given the split in authority that emerged within a short time of Brown's sentencing, as well as the Supreme Court's decision in *Rahimi* last term to uphold at least one firearm restriction, it's not obvious to us that any restriction that attached to Brown as a result of this conviction is unconstitutional. As a result, it's likewise not obvious to us that it was unconstitutional to ask him to acknowledge his restricted status at sentencing. We therefore reject this unpreserved claim for lack of obvious error.

B.    Rule 22(e)

¶38 In his opening brief, Brown next argued that, because he had "proved" in his plain error argument that "Utah's firearm restriction statutes are unconstitutional," this court should remand the case pursuant to rule 22(e)(2) of the Utah Rules of Criminal Procedure to allow the district court to correct his sentence. Under that rule, a district court

> must correct the sentence of a defendant who can prove that the sentence is unconstitutional under a rule established or ruling issued by the United States Supreme Court, the Utah Supreme Court, or the Utah Court of Appeals *after sentence was imposed*, and the rule or ruling was not dictated by precedent existing at the time the defendant's conviction or sentence became final.

Utah R. Crim. P. 22(e)(2) (emphasis added).

¶39  But *Bruen* was not issued "after sentence was imposed." *Id.* Instead, as noted, *Bruen* was issued before Brown's sentence was imposed, and Brown points to no decision from the Utah Supreme Court or this court that was issued after his sentence was imposed that establishes that the firearm restriction or the acknowledgment statute were unconstitutional. This claim accordingly fails.[10]

## CONCLUSION

¶40  For the reasons set forth above, we conclude that there was sufficient evidence to support Brown's conviction for aggravated assault, and we further conclude that Brown has not shown that the district court plainly erred in not striking Detective's testimony or in requiring Brown to acknowledge his status as a restricted person at sentencing.

¶41  Brown's conviction and sentence are affirmed.

———————

10. After the State pointed out in its responsive brief that rule 22(e)(2) is, on its face, inapplicable to this case, Brown asserted in his reply brief that "[t]o the degree that rule 22(e)(2) does not apply, rule 22(e)(1)(F) applies." Rule 22(e)(1)(F) states that a court "must correct a sentence when the sentence imposed . . . omits a condition required by statute or includes a condition prohibited by statute." Utah R. Crim. P. 22(e)(1)(F). But this is a new argument involving an entirely different provision of the rule. "Appellants are not permitted to raise matters for the first time in a reply brief," and "when a party fails to raise and argue an issue on appeal, or raises it for the first time in a reply brief, that issue is waived and will typically not be addressed by the appellate court." *Chard v. Chard*, 2019 UT App 209, ¶ 34, 456 P.3d 776 (quotation simplified). We decline to address the argument.