310 P.2d 398

**STATE of Utah, Plaintiff and Respondent,**

v.

**Max Floyd STOCKTON, Defendant and Appellant.**

No. 8569.

Supreme Court of Utah.

April 22, 1957.

George B. Handy, Ogden, for appellant.

E. R. Callister, Atty. Gen., Homer F. Wilkinson, Asst. Atty. Gen., for respondent.

WORTHEN, Justice.

Defendant appeals from a conviction of attempt to commit burglary. The State's evidence showed that an unidentified person or persons attempted to gain illegal entry to Jesperson's Mercantile in Huntsville, Utah, shortly after midnight on February 5, 1956; that defendant was seen with Dean Carter and Lee Goddard in Huntsville, Utah about 6 p. m. February 4, 1956; that a car bearing license number BY 782 was seen in the vicinity of Jesperson's Mercantile about 1:30 a. m. on February 5, 1956; that defendant Max Stockton was apprehended with Dean Carter and Lee Goddard in a car driven by Lee Goddard and bearing license number BY 782; that in the car was found a padlock identified as having been used in locking Jesperson's Mercantile, together with a suitcase containing burglary tools which were identified as having been used in the attempt to break into the Mercantile.

Defendant made a motion for a directed verdict at the end of the State's case. The motion was denied.

The evidence for defendant offered by defendant and Lee Goddard supported the conclusion that defendant was the innocent companion of Goddard and Carter. Goddard testified that he and Carter planned the burglary; that they had invited defendant to go to Huntsville to take Dean's sister-in-law there and also try to find some girls. He testified that defendant didn't know that they planned the burglary or that they had attempted to break into the Mercantile while defendant sat in the car completely innocent of any act or thought in furtherance of the burglary. Goddard further testified that defendant didn't know that the suitcase contained burglary tools.

The State questioned these statements of Goddard on cross-examination and asked him if he remembered having stated that he and Carter had agreed to take the blame because Stockton was in too deep, as follows:

"Q. Do you remember testifying that you and Mr. Carter agreed to take the blame, because he was in too deep?

"A. No. We did not say nothing about that.

"Q. That you were juveniles, do you remember that? A. No.

"Q. Do you remember telling Officer Covieo that's the reason you wanted to take the blame? A. No.

"Q. Do you remember telling Officer Covieo that you wanted to take the blame? That Mr. Stockton helped you plan this robbery, but you didn't want to so testify on the witness stand? A. No."

The State recalled Officer A. R. Covieo for the purpose of impeaching the testimony of Lee Goddard to the effect that defendant Stockton knew nothing about the attempted burglary, that he knew of no plans, and did not participate in any way.

Officer Covieo testified that he had a conversation with Lee Goddard pertaining to Max Stockton as follows:

"A. Goddard told me just before— Well, just after I had stopped the car, at the time he was getting out of the car, he stated the conversation between Lee Goddard and Dean Carter and Max Stockton was should Lee Goddard take the blame, along with Dean Carter, and leave Max Stockton out of it, because of the seriousness of it, and Max Stockton said yes, that he did want them to take the blame, because of the seriousness of the trouble he was already in."

The jury found defendant guilty and on appeal he contends that:

(1) The evidence is insufficient to sustain the conviction and defendant's motion for directed verdict after all evidence was in should have been granted.

(2) The court erred in refusing to grant defendant's motion for a directed verdict at the conclusion of the State's case and before defendant put on his evidence.

(3) The court erred in admitting the testimony of Officer A. R. Covieo as to statements made by Goddard out of defendant's presence implicating defendant Stockton.

(4) The court erred in refusing certain requested instructions of defendant.

As to the first contention of defendant, we are satisfied that the evidence before the jury was such that we will not disturb the verdict unless defendant is entitled to relief under one of the three other points of attack.

Nor are we able to agree with defendant that the court erred in refusing to grant his motion for a directed verdict at the conclusion of the State's case and before defendant put on his evidence.

■ It is unnecessary for us to determine what the result should have been had

defendant without putting on any evidence rested after the State put in its evidence and rested. Defendant did not elect to rest. Lee Goddard was called as a witness for defendant and when he was put on he became like any other witness, subject to impeachment. As heretofore observed Goddard gave defendant a clean bill of health. The State, to discredit Goddard, inquired into the former statements made by Goddard to Officer Covieo. Goddard denied making the statements and Officer Covieo was called and testified as set out herein that Goddard told him that defendant, Max Stockton had requested Goddard and Carter to take the blame because of the seriousness of the trouble he was already in.

We are of the opinion that defendant, having elected to put on his defense, made all testimony offered available for the jury's final consideration. In 17 A.L.R., page 925, the following is observed in a note on "Power and duty of court to direct or advise acquittal in criminal case for insufficiency of the evidence.—waiver of refusal to direct acquittal."

"In jurisdictions where it is held to be the duty of the court, in a proper case, to direct an acquittal, it is the general rule that, if the entire evidence is sufficient to sustain a conviction, the introduction of evidence by the defense, after the court has refused to direct a verdict of acquittal at the close of the prosecution's case, amounts to a waiver of the motion to direct."

In State v. Denison, 352 Mo. 572, 178 S.W.2d 449, 452, the court said:

"Appellant's first assignment is that the trial court erred in overruling his demurrers to the evidence at the close of the State's case and the whole case, grounded on the contention that there was no substantial evidence to support a verdict of guilty. In this connection it is to be remembered that whether or not the first demurrer should have been sustained, yet, since appellant did not stand on it but presented evidence in his own behalf, the trial court was bound to take the latter evidence into consideration insofar as it helped the State's case, in ruling on the second demurrer at the close of the whole case."

This court in a dicta statement in State v. Potello, 40 Utah 56, at page 70, 119 P. 1023, at page 1029, said:

"* * * Of course, he cannot complain of the insufficiency of the evidence to sustain the verdict, though the state failed to make a case, if he himself proved one for it."

■ Nor can we agree with defendant that the court erred in admitting the testimony of Officer A. R. Covieo. Defendant elected to put Goddard on the stand as his witness. Defendant's whole defense was grounded on the proposition that he was without any knowledge of what was going on and that he wasn't in the burglary with Carter and Goddard. The State was entitled to discredit Goddard's testimony by showing after having laid the basis for impeachment that Goddard had told Officer Covieo that defendant, Max Stockton, wanted Carter and Goddard to take the blame for the crime in question because of the seriousness of the trouble he was already in. The testimony of Covieo was proper to discredit Goddard, who was defendant's witness. The fact that the impeaching testimony had the further effect of linking defendant to the burglary in question does not bar the right to impeach.

We find no error on the part of the court in refusing to grant the requested instructions. The jury was properly instructed and the substance of the requested instructions was given.

Judgment affirmed.

McDONOUGH, C. J., and CROCKETT, WADE, and HENRIOD, JJ., concur.