2025 UT App 87

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JEFFREY WAYNE BUSH,
Appellant.

Opinion
No. 20221012-CA
Filed June 5, 2025

Fourth District Court, Heber Department
The Honorable Jennifer A. Mabey
No. 201500061

Ramon Ortiz, Debra M. Nelson, and Benjamin Miller,
Attorneys for Appellant

Derek E. Brown and Jonathan S. Bauer,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

ORME, Judge:

¶1 Jeffrey Wayne Bush appeals his conviction of third-degree felony criminal mischief, arguing that the district court should have granted a directed verdict in his favor and that his counsel (Counsel) provided constitutionally ineffective assistance in several regards. We reject Bush's claims and affirm.

BACKGROUND[1]

¶2    Bush advertised a room for rent in his house. Gabby[2] responded to the ad and moved in. Almost immediately, their relationship became sexual. But the "honeymoon" did not last long. In March 2020, nine days after Gabby moved in, Bush invited her parents over for dinner. He later claimed he wanted to meet them to try "to figure out a way to get [Gabby] out of the house." But after her parents left, Gabby and Bush shared a bottle of wine and had sex. Bush then went upstairs and locked the door to his bedroom, wanting to sleep. Gabby started knocking on his bedroom door, and Bush asked her to leave him alone. But Gabby persisted, asking to hug Bush. The two argued through the door for several minutes, much of which Bush recorded on his cell phone.

¶3    Eventually, Bush threatened to call the police. He then opened his bedroom door and tried to move into the bathroom to use the work phone he had left there to make the call. Gabby followed him into the bathroom, holding her own cell phone. Thinking it might be the cell phone he had just used to record their conversation, Bush grabbed the phone out of Gabby's hands. Upon realizing that it was not his, he repeatedly smashed it against the doorframe, breaking it into pieces. He collected the fragments and discarded them in a dumpster outside.

¶4    Gabby later testified that Bush then grabbed her by the hair and pulled her down some stairs, threatened to kill her, and pressed his arm against her chest and throat, which restricted her

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Brown*, 2025 UT App 31, n.1, 566 P.3d 737 (quotation simplified).

2. A pseudonym.

breathing, but the jury apparently did not find her credible in this regard. Using another cell phone she had in her pocket, she eventually managed to call 911. Police arrived and took Bush outside to separate him from Gabby. Gabby told an officer (Officer) that Bush had pushed her, broken her phone, and put his arm over her throat. And she showed Officer a bruise on her chest.

¶5 Officer then spoke to Bush outside. Although it was "very dark" outside, Officer's body camera captured audio of Bush explaining what had happened that night. Bush told Officer that he had "pushed [Gabby] away" because "she wouldn't leave [him] alone." When Officer said, "It's more than a push," Bush replied, "Yeah. I agree. I'm ready to go to jail." Officer then asked, "And what happened with the phones?" Bush said, "I broke one of her phones," and explained, "Yeah, I tried to get her to leave and leave me alone and she wouldn't do it." Bush again said, "Yeah, I'm . . . ready to go to jail. I did everything, you know." He then opened a dumpster and showed Officer the pieces of the broken phone. Officer asked Bush, "Why did you break the phone?," and Bush answered, "I [was] just trying to get her to leave me alone, man."

¶6 Bush was charged with aggravated assault and criminal mischief. In relevant part, the information charged him with "Criminal Mischief (Domestic Violence)" under then-Utah Code section 76-6-106(2)(c) for causing pecuniary loss between $1,500 and $5,000—a third-degree felony under then-section 76-6-106(3)(b)(ii).[3] But at the preliminary hearing, the State recognized that due to a "clerical error," the value of the pecuniary loss should have been listed as $500, making the offense a class A misdemeanor that would then be enhanced to a

---

3. Utah Code section 76-6-106 has since been amended, and this particular offense has been renumbered. *See* Utah Code Ann. § 76-6-106.1(2)(b) (LexisNexis Supp. 2024). We cite the version in effect at the time of the incident.

third-degree felony due to a prior domestic violence conviction. The court bound Bush over on both charges.

¶7      At the beginning of the two-day trial, the court read the information to the jury. The court described the criminal mischief charge as "Count 2, criminal mischief, domestic violence enhancement," but then, apparently forgetting the correction made at the preliminary hearing, mistakenly stated the requirement that Bush's "conduct caused or was intended to cause pecuniary loss equal to or in excess of $1,500 but . . . less than $5,000 in value."

¶8      At trial, Gabby testified about her version of the events outlined above, saying Bush had "smashed" her "brand-new iPhone" against the wall. Officer testified about his conversation with Bush, and the body camera recording of that conversation was played for the jury. At the close of the State's case, Bush moved for a directed verdict, with Counsel stating, "Judge, at this time we'd make a motion for a directed verdict that the State has not presented sufficient evidence to make their case and for the case to go to the jury. That's all." The court denied the motion.

¶9      Bush then testified in his own defense. He stated that he "grabbed the phone from" Gabby and admitted, "I did smash her phone." He also admitted that he knew it was Gabby's phone when he did so. On cross-examination, Bush testified that, after the incident but prior to trial, he had paid Gabby $600 for breaking the phone. And he acknowledged that "breaking that phone was not justified."

¶10     At the close of trial, the court discussed the final jury instructions with the parties. The court read the instruction regarding the criminal mischief charge, which stated that "the defendant, Jeffrey Wayne Bush, is charged in Count 2 with committing criminal mischief, domestic violence . . . . You cannot convict him of this offense unless based on the evidence you find beyond a reasonable doubt" each of the elements of the offense,

including "pecuniary loss equal to or greater than $500." The court then asked the parties whether that instruction was acceptable. Both Counsel and the State affirmed that it was. The court then instructed the jury accordingly.

¶11 The jury acquitted Bush of aggravated assault but found him guilty of criminal mischief. After the jury was dismissed, the State addressed the criminal mischief charge, saying, "[W]e had discussed as to Count 2, based on the value, that charge is a Class A misdemeanor because it's over $500." The State also reminded the court that the parties had agreed to provide proof of Bush's prior domestic violence conviction so the court could then determine "whether or not there was a domestic violence enhancement." Counsel acknowledged that the defense had "stipulated to that." The court then received evidence of Bush's prior plea in abeyance to domestic violence, and the criminal mischief charge was entered as a third-degree felony given the domestic violence enhancement.

ISSUES AND STANDARDS OF REVIEW

¶12 On appeal, Bush argues that the district court erred in denying his motion for a directed verdict because the State failed to present any evidence of the value of Gabby's cell phone—an essential element of criminal mischief. Generally, "when an appellant challenges the denial of a motion for a directed verdict based on the sufficiency of the evidence, the applicable standard of review is highly deferential" and we will uphold the denial "if, when viewed in the light most favorable to the State, some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Hawkins*, 2016 UT App 9, ¶ 32, 366 P.3d 884 (quotation simplified), *cert. denied*, 379 P.3d 1181 (Utah 2016). And ordinarily, our review is limited to the evidence presented before the motion for directed verdict is made. But, as we discuss in Part I, where a defendant later introduces evidence on the very point

on which he previously claimed insufficiency, he waives the directed verdict motion altogether. *See State v. McCallie*, 2016 UT App 4, ¶ 49, 369 P.3d 103 (concluding the district court did not err in denying the defendant's motion for a directed verdict "because the State *and the defense* presented sufficient evidence to support" conviction) (emphasis added).

¶13　Bush also argues that Counsel provided ineffective assistance by failing to (1) argue that Bush did not act intentionally in smashing the phone, (2) object to the purportedly flawed jury instruction on criminal mischief, and (3) file a motion to suppress Bush's statements to Officer. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Perkins*, 2024 UT App 101, ¶ 11, 554 P.3d 363 (quotation simplified).

ANALYSIS

I. Directed Verdict

¶14　Bush argues that the district court should have granted his motion for a directed verdict because the State, during its case-in-chief, failed to present any evidence of the value of Gabby's smashed cell phone.[4] But Bush himself presented

---

4. The State argues that Bush's unfocused directed verdict motion did not preserve this issue for appeal. But because the merits of this claim are easily resolved in the State's favor, we address it anyway. *See State v. Kitches*, 2021 UT App 24, ¶ 28, 484 P.3d 415 ("If the merits of a claim can easily be resolved in favor of the party asserting that the claim was not preserved, we readily may opt to do so without addressing preservation.") (quotation simplified), *cert. denied*, 496 P.3d 718 (Utah 2021).

evidence on this point, so any error the court made in denying the motion is inconsequential.

¶15    In *State v. Stockton*, 310 P.2d 398 (Utah 1957), our Supreme Court recognized that a defendant "cannot complain of the insufficiency of the evidence to sustain the verdict, though the state failed to make a case, if he himself proved one for it." *Id.* at 400 (quotation simplified). In doing so, the Court "adopted the waiver rule," embracing the notion that "presenting evidence after denial of a motion for directed verdict constitutes waiver of the motion to direct." *State v. McCallie*, 2016 UT App 4, ¶ 44, 369 P.3d 103 (quotation simplified).

¶16    In this case, Bush was charged with criminal mischief under then-Utah Code section 76-6-106(2)(c), which required that the defendant "intentionally damages, defaces, or destroys the property of another." And section 76-6-106(3)(b) conditioned the level of the offense on the monetary value of the destroyed property. While the State elicited testimony from Gabby that the phone was a "brand-new iPhone," it did not introduce evidence of the actual value of the phone. But following the unsuccessful directed verdict motion, Bush testified that prior to trial, he had paid Gabby $600 for breaking the phone. In doing so, under *Stockton*'s waiver rule, he waived the insufficiency argument he claims to have raised in his directed verdict motion because he himself supplied the missing evidence as to the value.

¶17    Bush resists this conclusion, arguing that *Stockton* is distinguishable on its facts because "there's practically no overlap between a broken phone and [the] attempted burglary" that was at issue there. *See* 310 P.2d at 398. But *Stockton* recognized "the *general* rule that, if the entire evidence is sufficient to sustain a conviction, the introduction of evidence by the defense, after the court has refused to direct a verdict of acquittal at the close of the prosecution's case, amounts to a waiver of the motion to direct." *Id.* at 400 (emphasis added; quotation otherwise simplified). Thus,

the factual differences between *Stockton* and the case at hand are immaterial to the application of the waiver rule.

¶18     Bush also points to cases where he claims we declined to apply *Stockton*'s waiver rule, urging us to do the same here. *See, e.g.*, *State v. Johnson*, 2023 UT App 145, ¶ 49 n.10, 540 P.3d 744 (noting the waiver rule but declining to further address it because the appellant did not put it at issue on appeal), *cert. denied*, 544 P.3d 458 (Utah 2024); *Salt Lake City v. Howe*, 2016 UT App 219, ¶ 7 n.1, 387 P.3d 562 (declining to address the waiver rule because "the evidence produced after the motion for a directed verdict neither substantially undercut the City's case-in-chief, nor provided inculpatory evidence that aided the City"); *McCallie*, 2016 UT App 4, ¶¶ 42–45 (declining to address the waiver rule because "the parties apparently agree that we may assess the sufficiency of the evidence in light of the entire record"). But in any event, *Stockton* is Utah Supreme Court precedent to which we are bound. *See In re adoption of B.N.A.*, 2018 UT App 224, ¶ 23, 438 P.3d 10 (noting that "we are duty-bound to follow the path" our Supreme Court has set). That precedent requires that here, where Bush introduced evidence on an element on which he previously claimed insufficiency, he effectively waived his directed verdict motion based on that insufficiency, which no longer existed after he put on his case.

¶19     Thus, any error the district court made in denying the directed verdict motion was inconsequential.[5]

---

5. Bush also argues that *State v. Stockton*, 310 P.2d 398 (Utah 1957), is no longer good law under United States Supreme Court precedent and should be overruled. To the extent that he raises these issues in anticipation of review by our Supreme Court, he has preserved them. *See State v. Brown*, 2025 UT App 31, ¶ 14 n.4, 566 P.3d 737. But this is an issue left to that Court, so we do not

(continued…)

## II. Ineffective Assistance of Counsel

¶20 Bush contends that Counsel provided ineffective assistance by failing to argue that Bush lacked the criminal intent to destroy Gabby's phone, failing to object to the jury instruction on criminal mischief, and failing to move to suppress incriminating statements Bush made to Officer. To prevail on these claims, Bush "must first show that counsel's performance was deficient, and second, that the deficient performance prejudiced the defense." *State v. Forbush*, 2024 UT App 11, ¶ 25, 544 P.3d 1 (quotation simplified), *cert. denied*, 550 P.3d 995 (Utah 2024). He "must establish both deficient performance and prejudice," and "if either is lacking, the claim fails and this court need not address the other." *Id.* ¶ 26 (quotation simplified).

¶21 To establish deficient performance, Bush "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* ¶ 25 (quotation simplified). "The focus of this inquiry is reasonableness, and we judge the reasonableness of counsel's challenged conduct, viewed as of the time of counsel's conduct." *Id.* (quotation simplified). "Even if a court concludes that counsel made an error, the ultimate question is always whether, considering all the circumstances, counsel's acts or omissions were objectively unreasonable." *State v. Miller*, 2023 UT App 85, ¶ 26, 535 P.3d 390 (quotation simplified), *cert. denied*, 540 P.3d 78 (Utah 2023).

¶22 And to establish prejudice, Bush "must show that there is a reasonable probability that, but for Counsel's unprofessional errors, the result of the proceeding would have been different." *Forbush*, 2024 UT App 11, ¶ 25 (quotation simplified). "A

---

address it. *See id.*; *State v. Sundara*, 2021 UT App 85, ¶ 60, 498 P.3d 443 ("[T]his court lacks the authority to overrule Utah Supreme Court precedent."), *cert. denied*, 502 P.3d 271 (Utah 2021).

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quotation simplified). "When evaluating prejudice, an appellate court should consider the totality of the evidence, taking into account such factors as whether the errors affect the entire evidentiary picture or have an isolated effect and how strongly the verdict is supported by the record." *Miller*, 2023 UT App 85, ¶ 27 (quotation simplified).

¶23   We address each of Bush's ineffective assistance claims under this standard.

A.    Lack of Intent

¶24   Bush first contends that Counsel was ineffective in failing to argue that he lacked the intent to commit criminal mischief. In particular, Bush argues Counsel should have renewed the motion for a directed verdict at the close of all the evidence based on the lack of intent, requested jury instructions on the affirmative defenses of self-defense and extreme emotional distress, or argued in closing arguments that Bush lacked intent. But Bush admitted—both in his conversation with Officer, which was played for the jury, and in his trial testimony—that he had destroyed the phone. And he testified that he knew it was Gabby's phone before he smashed it. Bush also admitted in his conversation with Officer that he smashed the phone because he "was just trying to get [Gabby] to leave [him] alone." Given all this, reasonable counsel could conclude that it would be futile to argue that Bush somehow broke the phone unintentionally. *See State v. Baer*, 2019 UT App 15, ¶ 7, 438 P.3d 979 ("Trial counsel's decision not to raise a futile motion for a directed verdict would not be deficient performance.") (quotation simplified). And because Bush also acknowledged that "breaking that phone was not justified," it was reasonable for Counsel not to request an instruction on affirmative defenses either. *See State v. Arnold*, 2023 UT App 68, ¶ 67, 532 P.3d 1267 (concluding that where "affirmative defenses were not available" to the defendant, "it

was neither deficient performance nor prejudicial for Counsel not to request instructions on them"), *cert. denied*, 540 P.3d 78 (Utah 2023). Thus, Bush cannot demonstrate deficient performance in this regard.

B.      Criminal Mischief Instruction

¶25     Bush also argues Counsel was ineffective in failing to object to the jury instruction on the elements of criminal mischief. At the beginning of his trial—despite the State's acknowledgment that it contained a "clerical error" regarding the monetary value—the court read from the amended information, which charged Bush with "Criminal Mischief (Domestic Violence)" and which indicated that Bush destroyed property worth between $1,500 and $5,000. But at the end of trial, the court correctly instructed the jury that to convict Bush of criminal mischief, it must find that he had destroyed property worth at least $500. Bush argues Counsel should have contested the initial instruction, as it "lowered the State's burden by a factor of three," allowing it to prove Bush committed felony criminal mischief based on a misdemeanor monetary value.

¶26     But Bush was convicted of third-degree felony criminal mischief based on a domestic violence enhancement to which he stipulated—not based on the monetary value of Gabby's phone. Thus, he cannot show he was prejudiced by Counsel's failure to object to the final instruction given.

C.      Lack of Suppression Motion

¶27     Finally, Bush argues that Counsel was ineffective in not filing a motion to suppress the recording of his conversation with Officer. Bush argues the incriminating statements he made during this conversation should have been suppressed because he was

subjected to a custodial interrogation in violation of his *Miranda* rights.[6]

¶28 "The Fifth Amendment to the United States Constitution provides that no person shall be compelled in any criminal case to be a witness against himself." *State v. Fredrick*, 2019 UT App 152, ¶ 28, 450 P.3d 1154 (quotation simplified), *cert. denied*, 458 P.3d 748 (Utah 2020). "To protect this right against self-incrimination, the United States Supreme Court held, in *Miranda v. Arizona*, 384 U.S. 436 (1966), that individuals who are in police custody must be apprised of their rights prior to any questioning." *Fredrick*, 2019 UT App 152, ¶ 28 (quotation simplified). These "*Miranda* warnings are not required every time police ask someone questions. But due to their critical importance, *Miranda* warnings must be given to a defendant subject to custodial interrogation." *State v. Jessop*, 2023 UT App 140, ¶ 38, 540 P.3d 713 (quotation simplified), *cert. denied*, 550 P.3d 998 (Utah 2024). "Where an individual is subject to custodial interrogation and not given *Miranda* warnings, any statement made by that individual is inadmissible at trial." *Id.* (quotation simplified).

¶29 "Custodial interrogation occurs where there is both (1) custody and (2) interrogation." *State v. Maestas*, 2012 UT App 53, ¶ 48, 272 P.3d 769 (quotation simplified). The parties do not contest whether Bush's conversation with Officer was an

---

6. The State notes that there is no recording of the five-minute period in which Bush was outside with a different officer and argues that this "gap in the record is fatal to Bush's ineffective-assistance claim" as he could have waived his *Miranda* rights prior to speaking with Officer. But what occurred during these five minutes was not discussed at trial. It was the incriminating statements made during Bush's conversation with Officer that led to his arrest. And the record is adequate for us to evaluate whether those statements should have been suppressed.

interrogation, so we focus only on whether Bush was in custody when it occurred.

¶30   "For *Miranda* purposes, 'custody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Jessop*, 2023 UT App 140, ¶ 40 (quotation simplified). "Questions of a suspect's custody are to be analyzed using a two-step analysis." *Id.* (quotation simplified). "The initial step is to ascertain whether, in light of the objective circumstances of the interrogation, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Id.* (quotation simplified). "If the court finds that an individual's freedom of movement was not curtailed, then the person was not in custody for *Miranda* purposes and the court's analysis ends there." *Id.* But "if the court does find that an individual's freedom of movement was curtailed, the focus turns to whether the relevant environment presented the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id.* (quotation simplified).

¶31   "The first part of this inquiry—whether a reasonable person would have felt free to leave—is an objective one." *Id.* ¶ 41 (quotation simplified). "Relevant factors include, but are not limited to, the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Id.* (quotation simplified).

¶32   Here, Bush's conversation with Officer took place just outside his own home—not in a police car or at the police station, settings that are "inherently coercive." *State v. Goddard*, 2021 UT App 124, ¶ 51, 501 P.3d 1188, *cert. denied*, 505 P.3d 55 (Utah 2022). *See State v. Heywood*, 2015 UT App 191, ¶ 51, 357 P.3d 565; *Layton City v. Carr*, 2014 UT App 227, ¶ 18, 336 P.3d 587. Bush stresses that he was not allowed to go back inside his house and that the

officers denied his requests for water. But the officers had separated Bush and Gabby to speak to them separately about their dispute. Just because Bush could not go back inside his house did not mean he was not free to end the questioning. And there were "no objective indicia of arrest such as readied handcuffs, locked doors, or drawn guns." *Heywood*, 2015 UT App 191, ¶ 51 (quotation simplified). The interview was also brief, lasting just ten minutes, which, as Bush himself acknowledges, "arguably cuts against the custody determination." *See id.*; *Carr*, 2014 UT App 227, ¶ 18 (noting that the defendant's interview was "brief and casual"). And though Bush was arrested at the end of the interaction, this was largely due to his own ready admission that he "did everything" and was "ready to go to jail."

¶33 Even if we consider the second step in the inquiry— "whether the relevant environment presented the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*," *Jessop*, 2023 UT App 140, ¶ 40 (quotation simplified)—Bush was just outside his own home and not "'in a room in which he was cut off from the outside world,' 'thrust into an unfamiliar atmosphere'" "that emphasized the 'invincibility of the forces of the law,'" or "'run through menacing police interrogation procedures.'" *State v. Schaefer*, 2025 UT App 4, ¶ 23, 563 P.3d 424 (quoting *Miranda v. Arizona*, 384 U.S. 436, 445, 450, 457 (1966)), *petition for cert. filed*, Mar. 12, 2025 (No. 20250261).

¶34 Thus, reasonable counsel could have concluded that Bush was not in custody prior to his arrest. And Counsel's decision not to seek suppression of Bush's statements therefore did not amount to deficient performance.

¶35 In sum, Bush has not shown that Counsel performed deficiently and that any alleged deficiency prejudiced him. Accordingly, each of his ineffective assistance claims fails.[7]

## CONCLUSION

¶36 The district court did not commit reversible error in denying Bush's directed verdict motion because, by presenting his own evidence regarding the value of the broken phone, Bush waived any argument concerning the sufficiency of the State's evidence. Bush also has not shown that Counsel was ineffective for not arguing lack of intent, not objecting to the initial criminal mischief jury instruction, or not filing a suppression motion. Accordingly, we affirm.

---

7. Bush also argues cumulative error based on his ineffective assistance claims. But the cumulative error doctrine "will not be applied when claims are found on appeal to not constitute error, or the errors are found to be so minor as to result in no harm." *State v. Martinez-Castellanos*, 2018 UT 46, ¶ 40, 428 P.3d 1038 (quotation simplified). Such is the case here.