**2024 UT App 101**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
CHRISTOPHER JOHN PERKINS,
Appellant.

Opinion
No. 20220746-CA
Filed July 18, 2024

Fifth District Court, St. George Department
The Honorable Jeffrey C. Wilcox
No. 211502451

Nicolas D. Turner and K. Andrew Fitzgerald,
Attorneys for Appellant

Sean D. Reyes and Connor Nelson,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and AMY J. OLIVER concurred.

ORME, Judge:

¶1 Christopher John Perkins appeals his convictions for driving under the influence and driving on a suspended license. The charges were based on evidence collected after an encounter between Perkins and a law enforcement officer in a parking lot. Perkins argues his trial counsel (Trial Counsel) provided ineffective assistance by not filing a motion to suppress the evidence. He also asserts the trial court was required to conduct a colloquy about self-representation or to appoint substitute counsel after he expressed his dissatisfaction with Trial Counsel's performance.

¶2 Because Perkins has not shown that Trial Counsel provided ineffective assistance, he is not entitled to a new trial. And because Perkins did not make a clear and unequivocal request to represent himself or show good cause for substitution of counsel, we discern no reversible error on the part of the trial court.

## BACKGROUND[1]

¶3 A woman (Witness) was seated in her vehicle when she observed Perkins park his truck in front of a gas station convenience store and enter the building. According to Witness, Perkins was "staggering" as he walked. She thereafter observed Perkins exit the store carrying a case of beer. Perkins placed the beer in a cooler located in the bed of his truck, but he removed one can and brought it with him into the vehicle. According to Witness, he opened the can, began drinking from it, and drove off.

¶4 Witness called police dispatch and reported what she had seen. At the dispatcher's request, Witness followed Perkins for approximately half a mile until he turned into a bank parking lot. Witness did not observe any irregularities with Perkins's driving.

¶5 Dispatch directed an officer with the St. George Police Department (Officer) to the bank parking lot. Because Witness had given a license plate number to dispatch, Officer was provided with Perkins's driver license information while en route, including a report that Perkins's driving privileges were suspended and, moreover, that he was restricted to operating vehicles with ignition interlock devices.

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Daniels*, 2002 UT 2, ¶ 2, 40 P.3d 611.

¶6     Officer made contact with Perkins, who was sitting in the truck with the engine running. As they spoke, Officer observed that Perkins's speech was slurred. Officer also smelled alcohol and noticed that Perkins's eyes were bloodshot and watery. Perkins told Officer that he had consumed a six-pack of beer that day, finishing a can approximately fifteen to twenty minutes before Officer's arrival. Officer then asked Perkins whether the vehicle was equipped with an interlock device, and Perkins confirmed it was not. Officer had Perkins exit his vehicle so he could administer field sobriety tests. Officer ran three tests, and Perkins failed each one. Officer, accordingly, arrested Perkins for suspicion of driving under the influence of alcohol and transported him to the police station.

¶7     After Perkins refused to take a breath or blood test, Officer obtained a search warrant, and another officer drew Perkins's blood. Toxicology reports showed that Perkins's blood-alcohol level was almost three times the legal limit. Perkins was charged with one count of driving under the influence, one count of failure to install an interlock device, and one count of driving on a suspended license. The interlock device charge was subsequently dismissed on the State's motion.

¶8     The matter proceeded to trial. During jury selection, but outside the presence of the prospective jurors, Perkins asked for a continuance, stating,

> Good afternoon, Your Honor. As to making a motion or just a suggestion, I would like to postpone these proceedings as to I don't feel that my counsel has been conducting himself in accordance with the rules of professional conduct or due diligence. I feel that he's been an ineffective loss of assistance of counsel. Furthermore, I'm going to file a complaint with the office of professional conduct. I haven't met with [Trial Counsel] in person until today. I've

barely talked to him over the phone over the last nine months. Plus the loss of exculpatory evidence from testimony due to the memory loss. Also, falsified documents knowing—that you present false documents is a second degree felony and to presenting them to this Court. So that's all I have, Your Honor.

¶9    The State opposed Perkins's request to continue the trial. After also hearing from Trial Counsel, the trial court denied Perkins's request. The court addressed Perkins, stating,

> [Y]ou can say what you want, file what you want against [Trial Counsel], but he knows what he's doing. I've seen the work that he's done in this case and with you. And I would think that State counsel would also say that he has spent time reviewing discovery, discussing this case. You haven't been left on your own, and he's ready to go.

Perkins replied, "That's fine."

¶10    The jury found Perkins guilty of both crimes. After his conviction and sentence were entered, Perkins filed this appeal.

ISSUES AND STANDARDS OF REVIEW

¶11    Perkins first argues that Trial Counsel provided ineffective assistance by not filing a motion to suppress the evidence gathered as a result of the encounter with Officer. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Guerro*, 2021 UT App 136, ¶ 25, 502 P.3d 338 (quotation simplified), *cert. denied*, 525 P.3d 1254 (Utah 2022).

¶12   Perkins also challenges the trial court's handling of the complaints he made about Trial Counsel's representation, arguing that the court should have inquired into whether he wanted to represent himself or whether it was necessary to appoint substitute counsel. Whether a defendant's waiver of the right to counsel was knowing and voluntary presents "a mixed question of law and fact," *State v. Pedockie*, 2006 UT 28, ¶ 23, 137 P.3d 716, and "[w]e review whether the right to counsel has been properly waived for correctness, but grant the trial court a reasonable measure of discretion when applying the law to the facts," *State v. Byington*, 936 P.2d 1112, 1115 (Utah Ct. App. 1997). "Whether a trial court should have inquired further into a defendant's dissatisfaction with counsel is reviewed for an abuse of discretion." *State v. Hall*, 2013 UT App 4, ¶ 8, 294 P.3d 632, *cert. denied*, 308 P.3d 536 (Utah 2013).

ANALYSIS

I. Ineffective Assistance of Counsel

¶13   To prevail on his ineffective assistance of counsel claim, Perkins must establish both that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Unless a defendant makes both showings," the claim fails. *Id.* To demonstrate deficient performance, Perkins "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish prejudice, Perkins "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

¶14   The Fourth Amendment to the United States Constitution guarantees individuals the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. Perkins argues that

Officer violated his Fourth Amendment rights by detaining him in the bank parking lot. When a defendant bases his ineffective assistance claim on his counsel's failure to raise a Fourth Amendment challenge, he cannot show actual prejudice unless he "prove[s] that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). We have held that a meritorious claim is one that "would likely have been successful." *State v. Beames*, 2022 UT App 61, ¶ 13, 511 P.3d 1226 (quotation simplified).[2] But at the other end of the spectrum, "[a] futile motion necessarily fails both the deficiency and prejudice prongs of the *Strickland* analysis." *State v. Makaya*, 2020 UT App 152, ¶ 9, 476 P.3d 1025, *cert. denied*, 481 P.3d 1039 (Utah 2021).

¶15 An investigatory detention is not constitutionally infirm if it is supported by "reasonable, articulable suspicion." *State v.*

---

2. The State argues that *State v. Beames*, 2022 UT App 61, 511 P.3d 1226, was wrongly decided and should be overruled, asking us to hold that a defendant claiming ineffective assistance of counsel cannot show his Fourth Amendment claim is meritorious unless he can establish that the suppression motion was certain to succeed. *See id.* ¶ 13 (recognizing the word "meritorious" is capable of two interpretations). While this court "has the power to overrule its own precedent," we do not do so lightly. *State v. Garcia-Lorenzo*, 2022 UT App 101, ¶ 44, 517 P.3d 424, *cert. granted*, 525 P.3d 1263 (Utah 2022). "[I]t is our supreme court—rather than some iteration of this court—that possesses primary responsibility for reviewing the propriety of opinions rendered by panels of this court." *Id.* ¶ 47. And no petition for certiorari was filed in *Beames*. But regardless, we decline the invitation to revisit *Beames* because, as we conclude below, there was *no* basis on which to suppress the evidence against Perkins, meaning Perkins's Fourth Amendment claim was not meritorious under any standard.

*Anderson*, 2013 UT App 272, ¶ 12, 316 P.3d 949 (quotation simplified). "Reasonable suspicion requires an objectively reasonable belief that an individual is engaged in or is about to be engaged in criminal activity." *State v. Gurule*, 2013 UT 58, ¶ 32, 321 P.3d 1039 (quotation simplified). This belief must be "based on specific, articulable facts drawn from the totality of the circumstances facing the officer at the time." *State v. Navarro*, 2017 UT App 102, ¶ 17, 400 P.3d 1120 (quotation simplified).

¶16 According to Perkins, Officer's encounter with him was a level two investigatory detention that was not supported by reasonable articulable suspicion at its inception. *See State v. Hansen*, 2002 UT 125, ¶ 35, 63 P.3d 650 ("A level two encounter involves an investigative detention that is usually characterized as brief and non-intrusive."). He therefore asserts that the evidence gathered as a result of the detention was suppressible as "fruit of the poisonous tree" and that Trial Counsel should have filed the appropriate motion. The State does not concede that the initial interaction between Perkins and Officer was a level two investigatory detention. But there is no need to address the parties' disagreement on this point because, as we conclude below, even assuming it was a level two encounter, the articulable facts overwhelmingly show that at the outset of his encounter with Perkins, Officer had an objectively reasonable belief that Perkins was engaged in criminal activity.

¶17 Before Officer approached Perkins, he received a communication from police dispatch that Witness had observed Perkins purchase beer, open a can while seated in the driver's seat of his vehicle, and then drive onto the highway. Even though neither Witness nor Officer saw Perkins drive erratically or commit any traffic infractions, the facts relayed by Witness amply support the initial investigative detention because operating a vehicle containing an open container of alcohol or while drinking alcohol is a criminal offense under Utah law. *See* Utah Code Ann. § 41-6a-526(2) (LexisNexis 2020) (prohibiting an individual from

drinking an alcoholic beverage while operating a motor vehicle regardless of "whether the vehicle is moving, stopped, or parked on any highway"); *id*. § 41-6a-526(3) (prohibiting an individual from transporting "in the passenger compartment of a motor vehicle . . . , when the vehicle is on any highway . . . , any container that contains an alcoholic beverage if the container has been opened, its seal broken, or the contents of the container partially consumed").

¶18 Perkins attempts to discredit Witness, arguing Officer was not entitled to consider the information she relayed to dispatch because it was not reliable. "The articulable facts supporting reasonable suspicion are usually grounded in an officer's personal perceptions and inferences, but in some cases the officer may rely upon external information—e.g., an informant's tip via police dispatch." *Kaysville City v. Mulcahy*, 943 P.2d 231, 234 (Utah Ct. App. 1997), *cert. denied*, 953 P.2d 449 (Utah 1997), *abrogated on other grounds by State v. Saddler*, 2004 UT 105, 104 P.3d 1265. When information suggesting an individual is involved in criminal activity comes from the observations of a citizen informant, multiple factors are relevant to whether that information contributes to an officer's reasonable suspicion. *See id.* at 234–36. These factors include, but are not limited to, "the type of tip or informant involved," "whether the informant gave enough detail about the observed criminal activity to support [an investigatory detention]," and "corroboration of the information by law enforcement through a police officer's personal observations." *Salt Lake City v. Bench*, 2008 UT App 30, ¶ 14, 177 P.3d 655 (quotation simplified), *cert. denied*, 199 P.3d 367 (Utah 2008).

¶19 Here, Witness was a citizen informant, acting on her own initiative, who provided police dispatch with her name and contact information. "A tip from an identified citizen-informant is generally considered highly reliable," and we presume the veracity of the information provided. *State v. Roybal*, 2010 UT 34, ¶ 16, 232 P.3d 1016 (quotation simplified). This is "because a

citizen informant volunteers information out of concern for the community and not for personal benefit." *Id.* (quotation simplified). And by providing her contact information, Witness opened herself up "to possible criminal and civil prosecution" if her report was shown to be false, thereby boosting the reliability of her information. *Id.* (quotation simplified).

¶20 Witness also relayed detailed information to the dispatcher. At trial, she testified that she "called dispatch and let them know that [she] saw someone go to the gas station, get the beer, possibly already drunk or had a few beers before that, and let them know that he was opening a can and that he drove off from the gas station." She not only gave dispatch a description of Perkins's vehicle and his license plate number, but she also followed Perkins for a short distance and told dispatch when he turned into a parking lot. These details were Witness's personal observations, not her chronicle of second-hand information. Perkins nevertheless argues that Witness's observations are insufficient to support reasonable suspicion that he was driving under the influence because Witness did not know him and, thus, had no foundation on which to base her belief that he was drunk. But this court has held that members of the public have "common knowledge about whether a person is under the influence of alcohol." *Salt Lake City v. Street*, 2011 UT App 111, ¶ 13, 251 P.3d 862 (quotation simplified). And, although Witness did not specifically explain to dispatch why she believed Perkins was intoxicated,[3] she did relay that she observed Perkins drinking

---

3. At trial, Witness testified that Perkins was "staggering" as he entered the convenience store, providing a basis for her belief that Perkins was intoxicated. Nothing in the record, however, confirms that Witness told dispatch that Perkins was staggering. Thus, we do not treat Witness's observation as a fact that supports Officer's reasonable suspicion.

from a can of beer as he drove off.[4] Thus, even assuming Witness incorrectly believed Perkins was drunk, the articulable facts she provided to dispatch are sufficient to support a reasonable suspicion that Perkins was committing the crime of driving while consuming alcohol. And this is the very information dispatch conveyed to Officer, who reported that he "responded to a radio call of a subject who appeared to be drinking while driving."

¶21    Finally, the information Witness provided to dispatch was corroborated by Officer's own observations. Witness followed Perkins's vehicle until he turned into a parking lot, and Officer found the vehicle parked in that lot. The vehicle was the color and make described by Witness, and the license plate number provided by Witness matched the plate on the vehicle.

¶22    In sum, Witness was a highly reliable citizen informant who personally observed behavior supporting a reasonable suspicion that Perkins was engaged in criminal activity. She conveyed detailed facts supporting that suspicion to a police dispatcher. The dispatcher communicated the information to Officer, whose own observations corroborated much of Witness's account. Thus, Officer was entitled to rely on Witness's report even though he did not personally observe Perkins's behavior at the convenience store.

---

4. Perkins argues Witness's tip was a mere assumption or hunch because, according to him, she testified at trial that she "was not certain he was drinking from a can of alcohol." This is a mischaracterization of Witness's testimony. Witness testified that she did not remember if the can from which Perkins was drinking had the name of a beer brand on it. But she also testified that she was parked not far from Perkins, she saw him go into the beer cooler in the convenience store, and she "know[s] what a beer can looks like."

¶23    When Officer approached Perkins, he was aware that Perkins had driven from the convenience store to the bank parking lot while drinking from an open container of alcohol, a crime under Utah law. Under the totality of the circumstances, we have no difficulty concluding that Officer had a reasonable suspicion that Perkins was involved in criminal activity. It follows that a motion to suppress the evidence collected as a result of the investigative detention would have had no merit. And "[a] futile motion necessarily fails both the deficiency and prejudice prongs of the *Strickland* analysis because it is not unreasonable for counsel to choose not to make a motion that would not have been granted, and forgoing such a motion does not prejudice the outcome." *State v. Makaya*, 2020 UT App 152, ¶ 9, 476 P.3d 1025, *cert. denied*, 481 P.3d 1039 (Utah 2021).

¶24    Accordingly, Perkins is not entitled to relief on his ineffective assistance of counsel claim because he cannot show either deficient performance or prejudice flowing from the alleged deficient performance.

## II. Self-representation and Substitution of Counsel

¶25    During a break in jury selection, Perkins asked the court to "postpone" his trial because he was unhappy with Trial Counsel's representation. The State voiced its opposition to the idea, and Trial Counsel responded to Perkins's accusations about him. The trial court denied Perkins's request, and the trial proceeded.

¶26    Perkins raises two arguments related to this exchange. He asserts the trial court erred by not recognizing he was requesting the opportunity to represent himself and by, therefore, neglecting to conduct a colloquy on self-representation. Alternatively, Perkins faults the court for not further inquiring into his dissatisfaction with Trial Counsel to determine whether substitute counsel should have been appointed. Both claims are unavailing.

¶27    The Sixth Amendment to the United States Constitution guarantees every criminal defendant the right to counsel, but defendants may waive that right and represent themselves in the criminal proceedings. *Faretta v. California*, 422 U.S. 806, 819–21 (1975); *State v. Smith*, 2018 UT App 28, ¶ 16, 414 P.3d 1092. "Before permitting a defendant to waive the right to counsel, a trial court should ensure that the waiver is voluntary, knowing, and intelligent." *Smith*, 2018 UT App 28, ¶ 16 (quotation simplified). According to Perkins, he waived his right to counsel but the trial court failed to conduct the necessary inquiry into whether the waiver was voluntary, knowing, and intelligent.

¶28    "A true waiver is one in which the defendant affirmatively represents that he wishes to proceed without counsel." *Id.* ¶ 18. The waiver must be made "clearly and unequivocally" to ensure that the defendant did "not unthinkingly waive the right to counsel through sporadic musings or, on appeal, mischaracterize statements he made in the trial court and claim . . . he was denied the right to self-representation if he was represented by counsel." *State v. Bakalov*, 1999 UT 45, ¶ 16, 979 P.2d 799 (quotation simplified). Here, Perkins's statement to the trial court does not even come close to a clear and unequivocal request to represent himself. And he concedes as much in his principal brief when he describes his statements as "alluding to the idea of representing himself." Because Perkins did not clearly and unequivocally communicate to the trial court that he wanted to exercise his right of self-representation, the court did not err in not conducting a colloquy about self-representation.

¶29    Perkins alternatively argues that the trial court was required to inquire further into his frustration with Trial Counsel, including exploring the possibility of appointing substitute counsel. When an indigent defendant expresses dissatisfaction with counsel, the trial court "must make some reasonable, non-suggestive efforts to determine the nature of the defendant's complaints and to apprise itself of the facts necessary to determine

whether the defendant's relationship with his or her appointed attorney has deteriorated to the point that sound discretion requires substitution." *State v. Pursifell*, 746 P.2d 270, 273 (Utah Ct. App. 1987). But a court's failure to conduct an inquiry does not automatically entitle the defendant to a remand. *See id.* at 274. *See also State v. Lovell*, 1999 UT 40, ¶ 30, 984 P.2d 382. The defendant must also show he or she was prejudiced. *See Lovell*, 1999 UT 40, ¶ 35.

¶30    "While an indigent defendant has a right to have counsel appointed to represent him, he does not have a constitutional right to a lawyer other than the one appointed, absent good cause." *Pursifell*, 746 P.2d at 272 (quotation simplified). Mandatory grounds for substitution include "a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict with" counsel. *Id.* at 274. Here, even if we assume the trial court's inquiry was inadequate, none of the complaints Perkins voiced to the court satisfy the substitution standard, and Perkins has not shown that further inquiry would have uncovered good cause for substitution.

¶31    Perkins told the trial court that he had not met with Trial Counsel in person and that he had "barely talked" to Trial Counsel. General complaints about the amount of time spent with counsel do not, in themselves, warrant the appointment of substitute counsel. *See id.* at 273–74 (concluding that "a single, face-to-face meeting before trial is not, in itself, indicative of a lack of [trial] preparation"). Perkins also alluded to the loss of "exculpatory evidence" and made a vague reference to "falsified documents." But he did not expound on these accusations and has not presented any appellate argument on the point. His appellate argument is limited to the conclusory assertion that further inquiry on the part of the trial court would have elicited "further information." Without identifying this "further information," Perkins cannot show that further inquiry on the part of the trial court would have led to the appointment of substitute counsel.

¶32    Accordingly, Perkins has not shown that he is entitled to relief on his claims related to the trial court's alleged failure to investigate the complaints he raised about Trial Counsel.

CONCLUSION

¶33    Because any motion to suppress the evidence collected as a result of Officer's interactions with Perkins would have been futile, Perkins has not shown that Trial Counsel was ineffective for not filing such a motion. The complaints about Trial Counsel that Perkins voiced to the trial court were not a clear and unequivocal request to represent himself at trial. And Perkins has not shown that the court would have appointed substitute counsel if it had engaged in a more in-depth inquiry into the complaints he voiced about Trial Counsel. Thus, the court did not commit reversible error when it did not engage in a colloquy with Perkins on self-representation or substitution of counsel.

¶34    Affirmed.

————