**2025 UT App 171**

### THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
DERRICK JOSEPH SPENCER,
Appellant.

Opinion
No. 20230215-CA
Filed November 20, 2025

Third District Court, Salt Lake Department
The Honorable Patrick Corum
No. 191906071

Melissa J. Townsend, Freyja Johnson,
Hannah K. Leavitt-Howell, and Heather Ellison,
Attorneys for Appellant

Derek E. Brown and Marian Decker,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and JOHN D. LUTHY
concurred.

ORME, Judge:

¶1　After Derrick Joseph Spencer had sex with Casey,[1] the minor sister of his best friend, he was convicted of rape of a child—an offense requiring proof that the victim was "younger than 14 years old" at the time of the crime. On appeal, Spencer argues the district court erred in denying his directed verdict motion based on the lack of evidence of Casey's age. And he raises several ineffective assistance claims regarding the performance of

---

1. We employ the pseudonym used by the parties in their briefing.

his trial counsel. We disagree with Spencer's arguments and affirm his conviction.

BACKGROUND[2]

¶2     Casey's brother (Brother) and Spencer were best friends, whose families were also close. One night, Spencer, who was 19 or 20 years old at the time, was drinking at Casey and Brother's home. Because Brother was too drunk to go downstairs to his own bedroom, he went to bed in an upstairs room, while Spencer decided to sleep on the couch. Casey was in her own room when Spencer entered and asked her to vape with him. The two then went downstairs to retrieve a vaping device from Brother's bedroom. In Brother's room, Spencer showed Casey "tricks" with the vape smoke as they talked. Casey's grandmother (Grandmother), whose own bedroom was nearby, came in and told Casey to go to bed. Casey went back to her bedroom for a while but returned to Brother's room when Spencer asked her to.

¶3     When Casey returned to Brother's room, Spencer started to tickle her, touching her "bottom" and "chest." When Casey felt something hard against her legs, Spencer told her, "Oh, it's like a boner," and asked her if she wanted to have sex. Casey, who had not even kissed anyone before, was surprised but not uninterested. She went upstairs to "get ready," putting on the "most adult" underwear she owned.

¶4     When Casey once again returned to Brother's room, Spencer was in bed. He told her to turn the lights off and take her clothes off. Casey complied, then got into bed with Spencer and

---

2. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Brown*, 2025 UT App 31, n.1, 566 P.3d 737 (quotation simplified).

found he had removed his pants and underwear. He asked Casey to straddle him, which she did, and asked if he could put his penis in her vagina. She agreed, but Spencer struggled to do so, as he did not use a condom or lubricant. Spencer asked Casey to help him by "sitting down on his penis." Doing so hurt Casey. Spencer asked if she was "okay" and told her that it would "get better." He then grabbed her hips and moved her up and down.

¶5     Grandmother interrupted by knocking on the bedroom door and asking, "What's going on in there?" Casey hid under the covers while Spencer spoke with Grandmother, whom he eventually convinced to leave. Spencer then asked Casey if they could try a different position and put her on her hands and knees while he knelt behind her. He asked Casey to help guide his penis to her vagina. This was "very uncomfortable" for Casey. When Grandmother came back a third time, Casey hurriedly started dressing and Spencer suggested that she climb through the window and return to her room. Casey did not want to exit through the window because it was cold outside and she did not have shoes, so she hid in the closet and finished dressing. Eventually, Spencer left Brother's room, and Casey snuck back to her own bedroom.

¶6     "[A] while later," "like a couple of months" by Casey's estimation, she noticed a change in her vaginal odor. Concerned, she asked her mother (Mother) to take her to a doctor and told Mother about having sex with Spencer. Mother made an appointment with a gynecologist. At the appointment, Casey expressed worry that she might have contracted a sexually transmitted infection (STI). Casey did not have an STI, but after Mother privately explained to the doctor what had allegedly happened between Casey and Spencer, the doctor reported the information to the police.

¶7     A detective (Detective) interviewed Casey at the Children's Justice Center. Casey was reluctant to speak with Detective at

first, but she eventually told her that she had sex with Spencer and mentioned "being on her knees at one point, and that's really all." Casey did not share any other details with Detective because she was "ashamed" and did not "want anyone to get in trouble." Detective next spoke with Spencer, who denied having sex with Casey. Spencer was charged with unlawful sexual activity with a minor, but the charge was later amended to rape of a child—a first-degree felony.

¶8     Prior to trial, the State filed a motion for discovery, which the court granted. Spencer did not do the same. A one-day jury trial was held on August 30, 2022. During the State's opening statement, the prosecutor presented a detailed account of what had occurred on the night in question. Apparently, Casey had provided the prosecutor with more information than she had divulged to Detective. Spencer's counsel (Counsel) objected, stating, "Most of what was just mentioned in the opening was not provided to us in any way." Counsel argued that the State should have provided Casey's more detailed statements in advance of trial. The court acknowledged that there was an "unequal opportunity to discuss things with the named victim" but observed that Spencer had not filed a discovery request. Counsel asked for a continuance and then a mistrial based on "[d]iscovery violations," but the court denied the motions and the trial proceeded.

¶9     Three witnesses testified for the State: Casey, Mother, and Detective. Casey testified that she was 18 years old at the time of trial. When asked what season it was when she had sex with Spencer, she said she did not know but remembered that it was "cold." She testified that she went to the doctor "a couple of months" later. The State refreshed her recollection with her medical records, which showed that the doctor's appointment was on May 25, 2018. The State also asked Casey, "So in between the time—well, around the time that you went to the doctor— maybe a little bit before that—did you have a birthday?" Casey

said she did and that she had sex with Spencer before her birthday. She testified that she remembered the incident was before her birthday because she wondered if Spencer would care that it was coming up and whether he would "care about, like, me as a person other than the encounter we had."

¶10 Detective testified about interviewing Casey. She recounted that Casey was "[v]ery closed off" and did not give a detailed account of the incident. Detective also testified about her conversation with Spencer, saying, "He said, no, he wouldn't have sex with her because she was 14."

¶11 Mother testified about the relationship between her family and Spencer's. She also testified that Casey became very emotional one night and disclosed that she had sex with someone. Mother explained that Casey could not "bring herself to say the person," so Casey typed Spencer's name on Mother's phone. Mother further testified about taking Casey to the doctor's appointment and telling the doctor about the sexual encounter.

¶12 After the State rested, Counsel moved for a directed verdict on the ground that the State had not "presented a prima facie case to establish [the] alleged victim's age." Counsel pointed out that there was no evidence of Casey's actual birth date. The court noted that although the State's evidence required "stringing a number of inferences together," "the standard for a directed verdict is whether a prima facie case has been made and whether there is . . . some believable evidence produced for each and every element of the crime." The court then denied Spencer's motion, stating, "I certainly can't say that there's not an inference that she was 13 at the time that she's alleging this happened."

¶13 During the State's closing argument, the prosecutor presented a timeline via a demonstrative exhibit, as follows:

| | |
|---|---|
| January 2018 (age 13) | Defendant has sexual intercourse with [Casey]. |
| [Casey] has a birthday. | [Casey] turns 14 years old. |
| May 24,[3] 2018 (age 14) | [Casey] visits the doctor. Doctor makes a report to DCFS. |
| June 7, 2018 (age 14) | [Casey] is interviewed at [the] Children's Justice Center by Detective[.] |

The prosecutor argued that Casey's "birthday was significant to her . . . in 2018. She turned 14. And she testified about how she wondered if the defendant would care that she had turned 14." During the defense's closing argument, Counsel asserted, "The [S]tate telling you that she testified that she was 13 is not in evidence." Counsel further argued, "What we've heard in the trial was [Casey] testifying about a birthday. It wasn't clear when that birthday was. And the only timeline we have is that she went to the doctor sometime in May." During rebuttal argument, the prosecutor referred to the "rough timeline" that had been developed and stated, "In January of 2018, the defendant had sex with [Casey]. [Casey] had a birthday at some point during the time between January of 2018 and May of 2018." Counsel objected to the mention of January 2018, arguing that this date was not in evidence. The court sustained the

---

3. This date is one day off from what the evidence established. *See supra* ¶ 9.

objection. Counsel did not object to any of the prosecutor's other statements.

¶14 The jury was instructed that it should not consider the attorneys' arguments as evidence. During deliberation, the jury submitted a question to the court, asking, "What is [Casey's] date of birth?" The court responded, "You must rely upon your recollection of the evidence presented." Thereafter, the jury found Spencer guilty of rape of a child.

¶15 At sentencing, the State mentioned that it had "explored the potential for some other alternative . . . for this case, some other alternative either at sentencing or some kind of post-trial—something creative there." But the State explained it had changed its mind after speaking with Casey. The court sentenced Spencer to six years to life in prison.

¶16 Spencer then filed a motion for a new trial, arguing, among other things, that the district court erred in denying his directed verdict motion. The court acknowledged that the "record of this case is already replete with the court's concerns over the state of the evidence of the victim's age presented by the State." Nevertheless, the court concluded that "the undisputed and credible evidence appears to support no other logical conclusion than that these acts occurred prior to her 14th birthday." The court further stated, "The combination of her age at the time of trial, the statement that this occurred in 2018, the evidence that this caused her to see a doctor in May of 2018, and that this occurred prior to her birthday (even without any evidence of what her actual birthdate is or any precise evidence as to when this occurred) supports the jury's conclusion." Spencer appeals.

ISSUES AND STANDARDS OF REVIEW

¶17    Spencer argues that the district court erred in denying his directed verdict motion. "When an appellant challenges the denial of a motion for a directed verdict based on the sufficiency of the evidence, the applicable standard of review is highly deferential" and we will uphold the denial if, "when viewed in the light most favorable to the State, some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Hawkins*, 2016 UT App 9, ¶ 32, 366 P.3d 884 (quotation simplified), *cert. denied*, 379 P.3d 1181 (Utah 2016).

¶18    Spencer also argues that Counsel provided ineffective assistance in three respects. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Perkins*, 2024 UT App 101, ¶ 11, 554 P.3d 363 (quotation simplified).

ANALYSIS

I. Directed Verdict Motion

¶19    Spencer was charged under Utah Code section 76-5-402.1(1), which, at the time, required the State to prove that he had "sexual intercourse with a child who is under the age of 14." Spencer argues that the district court applied the wrong standard in denying his directed verdict motion and that even under the correct standard, the State failed to prove that Casey was under 14 at the time of the crime.

¶20    We begin by reminding the reader of the correct standard for denying a directed verdict motion. "The defendant must show

that, when viewed in the light most favorable to the State, *no evidence existed* from which a reasonable jury could find beyond a reasonable doubt that the defendant committed the crime." *State v. Ngoy*, 2025 UT App 106, ¶ 8, 574 P.3d 1023 (emphasis in original; quotation otherwise simplified), *petition for cert. filed*, Aug. 20, 2025 (No. 20250947).

¶21 But in arguing for a directed verdict, Counsel suggested that the State had not "presented a prima facie case to establish [the] alleged victim's age." The district court responded that although the evidence required "stringing a number of inferences together," "the standard for a directed verdict is whether a prima facie case has been made and whether there is . . . some believable evidence produced for each and every element of the crime." Accordingly, the court denied Spencer's motion, stating, "I certainly can't say that there's not an inference that she was 13 at the time that she's alleging this happened."

¶22 Spencer argues that the court articulated an incorrect directed verdict standard that lowered the State's burden to prove Casey's age. But to the extent the district court articulated an incorrect standard (and then applied it in denying Spencer's directed verdict motion), Counsel invited the error when he argued that the State had not made a "prima facie" showing that Casey was under 14. *See Somer v. Somer*, 2020 UT App 93, ¶ 14, 467 P.3d 924 (noting that "an error is invited when counsel encourages the district court to make an erroneous ruling" by manifesting "some sort of affirmative representation . . . that the court is proceeding appropriately," and stating that "where a party makes an affirmative representation encouraging the court to proceed without further consideration of an issue, an appellate court does not consider the party's objection to that action on appeal") (quotation simplified). We thus cannot say the district court committed reversible error in using the "prima facie case" standard that Counsel invited it to use.

¶23    And even under the correct standard, Spencer cannot show that he was entitled to a directed verdict. To succeed on a directed verdict motion, Spencer was required to "show that, when viewed in the light most favorable to the State, *no evidence existed* from which a reasonable jury could find beyond a reasonable doubt that [he] committed the crime." *Ngoy*, 2025 UT App 106, ¶ 8 (emphasis in original; quotation otherwise simplified). But Casey was 18 years old at the time of trial on August 30, 2022. She testified that while she did not remember the exact time of year when she had sex with Spencer in 2018, she remembered "it being cold" enough that she did not want to climb out the window of Brother's room to avoid Grandmother discovering her with Spencer. Casey testified that she went to the doctor "a couple of months" after the sexual encounter, and evidence was presented that the appointment was on May 25, 2018. She also testified that she had sex with Spencer before her birthday as she remembered thinking about her birthday "coming up" and wondering whether Spencer knew or cared.[4]

¶24    We share the district court's puzzlement as to why the State did not present direct evidence of Casey's exact birth date. But viewed in the light most favorable to the State, the evidence did allow a reasonable jury to find beyond a reasonable doubt that Casey was 13 when the sex occurred and thus that Spencer was guilty of rape of a child.

## II. Ineffective Assistance of Counsel

¶25    Spencer also argues that Counsel provided ineffective assistance in three respects. First, he faults Counsel for inviting the district court's application of an incorrect directed verdict standard. Second, he argues that Counsel should have objected to what he views as the prosecutor's repeated misrepresentations of

---

4. There is no dispute that the relevant birthday is the one when Casey would have turned 14 years old.

the evidence regarding Casey's age during closing argument. And finally, he argues that Counsel should have filed a discovery request seeking pretrial statements made by Casey.

¶26 "To prevail on an ineffective-assistance-of-counsel claim, a defendant must show both that counsel's performance was objectively deficient, and a reasonable probability exists that but for the deficient conduct defendant would have obtained a more favorable outcome at trial." *State v. Reid*, 2018 UT App 146, ¶ 19, 427 P.3d 1261 (quotation simplified), *cert. denied*, 432 P.3d 225 (Utah 2018). "A defendant's inability to establish either element defeats a claim for ineffective assistance of counsel." *Id.*

¶27 Here, we do not consider whether Counsel's performance in any of these respects was deficient because Spencer has not shown that he was prejudiced thereby. *See id.* ¶ 20. "To demonstrate prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quotation simplified). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quotation simplified).

¶28 We address the prejudicial effect of each of Spencer's ineffective assistance claims in turn.

A.    Directed Verdict Standard

¶29 Spencer suggests that, to the extent that Counsel invited any error in the legal standard the district court applied in denying his directed verdict motion, *see supra* ¶ 22, this constituted ineffective assistance. Again, to be entitled to a directed verdict, "the defendant must show that, when viewed in the light most favorable to the State, *no evidence existed* from which a reasonable jury could find beyond a reasonable doubt that the defendant committed the crime." *State v. Ngoy*, 2025 UT App 106,

¶ 8, 574 P.3d 1023 (emphasis in original; quotation otherwise simplified), *petition for cert. filed*, Aug. 20, 2025 (No. 20250947). As discussed, the State presented evidence from which the jury could conclude that Casey was 13 when she had sex with Spencer. *See supra* ¶¶ 23–24. Even absent Counsel's invitation for the court to apply the incorrect "prima facie" standard, Spencer cannot show that the court would have directed the verdict in his favor. Thus, Spencer cannot show prejudice on this claim.

B.      Prosecutor's Closing Argument

¶30      Spencer also argues that Counsel should have objected or moved for a mistrial when the prosecutor "repeatedly misrepresented the evidence" regarding Casey's age during closing argument. He argues had Counsel done so, the court would have struck the statements from the record or granted a mistrial. We disagree.

¶31      Spencer points to the fact that during deliberation, the jury submitted a question to the court, asking, "What is [Casey's] date of birth?" He argues that this shows that the jury did not find the evidence of Casey's age to be "unequivocal." And he argues that the court's answer, which instructed the jury to rely on its "recollection of the evidence presented," did not rectify this issue because the State's other evidence of her age was sparse. But as we have discussed, there was sufficient evidence presented at trial from which the jury could determine that Casey was 13 at the time of the rape. *See supra* ¶¶ 23–24. The jury was instructed that the attorneys' opening statements and closing arguments were not to be considered as evidence. And we assume that juries follow the directives of the district court. *See State v. Mendoza*, 2025 UT App 46, ¶ 24, 568 P.3d 265 ("Jurors are presumed to have followed a trial court's instructions.") (quotation simplified), *cert. denied*, 570 P.3d 661 (Utah 2025). In any event, because there was evidence from which Casey's age could be inferred, the prosecutor's statements were proper. *See State v. Haynes*, 2025 UT App 75, ¶ 66,

571 P.3d 1197 ("Prosecutors have considerable freedom to discuss properly admitted evidence and reasonable inferences that may be drawn from it.") (quotation simplified), *cert. denied*, Sept. 10, 2025 (No. 20250823). Thus, there is no reasonable likelihood that an objection or a mistrial motion based on those statements would have been successful.

## C.      Discovery Motion

¶32    Finally, Spencer argues that Counsel should have filed a discovery motion seeking pretrial statements made by Casey. Spencer argues that had Counsel done so, there is a reasonable likelihood that the defense could have arranged a favorable plea deal for him. Even assuming for the sake of argument that Counsel should have filed such a motion, failure to do so did not prejudice Spencer.

¶33    Spencer posits that the State would have been willing to offer a plea deal to shield Casey from having to "testify about details she was reluctant to speak about at trial." And he suggests that the State's "unusual step" of considering a potential post-conviction plea arrangement as discussed at sentencing indicates the State's willingness to have done so before trial. But the State never framed the "creative" "alternative" it considered after trial and before sentencing as a plea agreement per se. And it decided not to explore such an alternative after speaking with Casey.

¶34    Ultimately, Spencer "must show a substantial likelihood of a different result as a demonstrable reality and not merely as a speculative matter." *State v. Green*, 2023 UT 10, ¶ 107, 532 P.3d 930 (quotation simplified). But both the notion and the contours of the plea deal he suggests the State would have offered are entirely speculative. And Spencer does not argue that Counsel's filing of a discovery motion would have benefited him in any other way. Accordingly, on this basis, we cannot conclude that Counsel's

failure to file a discovery request that would have encompassed Casey's pretrial statements prejudiced Spencer.

¶35 In sum, Spencer has not shown that he was prejudiced by Counsel's inviting the district court's application of an incorrect directed verdict standard, failure to object to the prosecutor's statements during closing argument, or failure to file a discovery motion. Accordingly, his ineffective assistance claims fail.[5]

---

5. Spencer has also filed a motion under rule 23B of the Utah Rules of Appellate Procedure seeking remand to develop the record in support of two additional claims of ineffective assistance. "A rule 23B remand is available only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." *State v. Haynes*, 2025 UT App 75, ¶ 24, 571 P.3d 1197 (quotation simplified), *cert. denied*, Sept. 10, 2025 (No. 20250823). Spencer points to his own declaration in which he stated that Brother, who was facing domestic violence charges, told him that Casey "had agreed to lie to police to help him." He also attached a declaration from his mother in which she states that her "domestic partner," Spencer's father, was having an affair with Mother at the time of the rape. Spencer's mother stated that she informed Spencer's prior counsel of the affair, and this attorney later passed the information along to Counsel. She also declared that she informed Counsel that Casey had made a false police report to protect Brother. Spencer argues that Counsel was deficient in not investigating these allegations and that the information could have changed the outcome of his trial by casting doubt on the veracity of Casey's claim that Spencer had sex with her. But neither declaration asserts that Counsel did not investigate these family dynamics. Moreover, it certainly would have been reasonable for Counsel to decide that dragging these extraneous details into trial would do more harm than good to Spencer's case.

(continued…)

CONCLUSION

¶36    The district court correctly denied Spencer's motion for a directed verdict, as there was sufficient evidence from which the jury could infer that Casey was under the age of 14 at the time of the rape. And because Spencer cannot show that he was prejudiced by any of the alleged deficiencies in Counsel's representation, his ineffective assistance claims fail.

¶37    Affirmed.

───────────

*See State v. Raheem*, 2024 UT App 29, ¶ 35, 546 P.3d 331 ("Defense counsel's decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.") (quotation simplified), *cert. denied*, 550 P.3d 997 (Utah 2024). *See also Burke v. State*, 2015 UT App 1, ¶ 20, 342 P.3d 299 ("An attorney can avoid activities that appear distractive from more important duties.") (quotation simplified), *cert. denied*, 352 P.3d 106 (Utah 2015). Thus, even if true, the facts in these declarations do not support a determination that Counsel was ineffective, and we deny the motion for remand.